DENNIS KERRIGAN *vs.* COMMERCIAL BREWING COMPANY.

Suffolk.    December 8, 1913. — January 8, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Negligence,* Employer's liability.

In an action for personal injuries sustained by a night watchman in a brewery of the defendant by reason of the breaking of the middle step of a flight of three steps which the plaintiff in the course of his duty was attempting to descend, where there was evidence that the steps were much worn away in their centre, especially the middle one which was like a half moon, by the dragging over them of barrels and hogsheads bound with iron hoops, that six or eight weeks before the accident the defendant's fireman had fallen in passing over the same steps and then had examined the steps and had called the brew-master's attention to their defective condition, it was *held,* that a jury would be warranted in finding that the plaintiff was in the exercise of due care and that the defendant was negligent; and that the question, whether the defendant had made out the affirmative defense of *volenti non fit injuria,* also was for the jury.

A night watchman in a brewery, whose duty it is to report "anything broken or out of order" and "to examine windows and doors and look after the temperature of goods in process of manufacture," does not have imposed upon him the duty of examining everything in the brewery to see that there is not something "broken or out of order," and consequently he is not precluded from recovering from his employer for an injury sustained by him by reason of the breaking of a defective step in a flight of three steps which in the course of his employment he passed over daily, where although the step was worn the danger of its giving way was not obvious.

TORT for personal injuries sustained by the plaintiff on the evening of September 26, 1908, when he was employed as a night watchman in the defendant's brewery and outbuildings on Roland Street in Boston, by reason of the breaking of the middle step of a flight of three steps which the plaintiff in the course of his duty was attempting to descend.    Writ dated June 2, 1909.

In the Superior Court the case was tried before *Brown,* J., who at the close of the plaintiff's evidence, which is described in the opinion, ordered a verdict for the defendant, and reported the case for determination by this court, with a stipulation of the parties that, if the plaintiff was entitled to go to the jury, judgment should be entered for the plaintiff in the sum of $2,500.

*F. K. Linscott,* for the plaintiff.

*J. Lowell,* (*L. Hill* with him,) for the defendant.

LORING, J.    The plaintiff in this action was employed by the defendant as a night watchman.    As night watchman it was his duty to pass hourly through the defendant's brewery and outbuildings; it was also his duty "to examine windows and doors and look after the temperature of goods in process of manufacture."

In the course of his rounds the plaintiff had to go into and through a wooden building which stood across the yard from the brewery itself.    As he entered this wooden building he walked on the same level into the wash house.    From there he passed over a flight of three steps, through two sliding doors into the shipping room, and through the shipping room into the cooper shop, in which there was one of the watchman's clocks which he had to "ring" each hour.

On the evening of September 26 he went on duty at 6.30 o'clock. It was then dark.    About seven he went with his lantern to the cooper room and rang the clock there.    The plaintiff testified that when on his return he reached the sliding doors at the head of the three steps he stopped to pull to one sliding door, and that while pulling it to he had his left foot on the upper step and his right foot on the middle step.    After pulling to the sliding door he "took the left foot off" the top step and "the other [the middle step] seemed to break away with me and I fell in a heap," to quote the words of his testimony.

The treads of these three steps were three feet long and made of "one-inch stock."    These three boards had no support in the middle.    There were stringers on the sides only.    They were originally eight inches wide, but by the use which we are about to state they had been worn away, so that at the time of the accident here complained of they were only from five to five and a half inches wide in the middle.    One of the uses to which these steps had been put by the defendant was the dragging over them of barrels and hogsheads bound with iron hoops.    The result of this use was that the outer edge, in place of being straight, was in the shape of a "half moon."    The plaintiff and the fireman examined the steps after the accident and found (to quote again from the plaintiff's testimony) "a piece of wood, a part of the front edge of the middle step, on the right hand side where he

fell, hanging down by the end from the groove it had been in, in the side of the flight of steps. This piece was about two inches wide at the end where it hung on the steps." The plaintiff further testified "that in passing over the steps, on account of their being narrow in the centre, he was accustomed to carefully place his foot on them lengthwise, illustrating the manner to the jury, and was doing so at the time the accident occurred."

The fireman testified that he "had seen hogsheads and barrels put down over the steps. Some of them were 'shoved down,' bumped from one step to the other, one side to the other until they landed at the bottom in the centre where the hole was in the floor. This hole had been caused by [the] landing of the packages." He also testified that "six or eight weeks before the time of the accident at noon time he had passed over the same steps and had fallen. He called the brew-master's attention to it. He examined the steps at that time. They were quite well worn from taking barrels down that way. In places knots resisted the wear of the barrels. The middle step was the most worn. It was like a half moon. Hoops of barrels had ground it right down on the slant."

On this evidence the jury were warranted in finding that the plaintiff was in the exercise of due care, and that the defendant was negligent in allowing the step, for want of repair, to fall into a condition in which it was liable to break and give way when trodden upon. Whether the defendant had made out the affirmative defense of *volenti non fit injuria* was for the jury. *Leary* v. *William G. Webber Co.* 210 Mass. 68. *Flaherty* v. *New York Central & Hudson River Railroad,* 211 Mass. 570. *Mackenzie* v. *New York Central & Hudson River Railroad,* 211 Mass. 586. *Lavartue* v. *Ely Lumber Co.* 213 Mass. 65. It might well be found that although the plaintiff knew that the steps had been worn away, he did not wholly appreciate their weakness and so did not voluntarily assume the risk of their defective condition.

*McAuliffe* v. *Gale,* 180 Mass. 361, is one of the exceptional cases referred to in *Leary* v. *William G. Webber Co., ubi supra,* where the defense of non-contractual assumption of risk is made out as matter of law. That was a case where the employee was injured by the normal operation of a machine put in after he became an employee, but near which he continued to work for several months after it was put in.

There is nothing in the other cases cited by the defendant which calls for notice.

The defendant has contended that the plaintiff cannot recover because (as he himself testified) it was his duty to report "anything broken or out of order." That means that if he saw anything out of order it was his duty to report it. But it was not his duty to examine everything in the brewery and outbuilding to see that there was not something "broken or out of order." The only examination which it was his duty to make was "to examine windows. and doors and look after the temperature of goods in process of manufacture." The case therefore does not come within *Wescott* v. *New York & New England Railroad,* 153 Mass. 460; *Buchanan* v. *New York, New Haven, & Hartford Railroad,* 213 Mass. 473.

By the terms of the report judgment must be entered for the plaintiff in the sum of $2,500; and it is

*So ordered.*