UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellant, *v.* ALFRED H. NEWBURGER et al., Copartners under the Firm Name of NEWBURGER, HENDERSON & LOEB, Appellants and Respondents, and RAY GLEASON et al., Respondents.

(Argued October 10, 1933; decided November 21, 1933.)

*William J. McArthur* for plaintiff-appellant. At common law and in the absence of a statute to the contrary, title to a stolen certificate of stock could not be conveyed by or through the thief, even though received in good faith and for value. (*McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325; *Knox* v. *Eden Musee Co.*, 148 N. Y. 441; *Page* v. *Clark*, 100 Misc. Rep. 395.) Article 6 of the Personal Property Law has no application to the case at

bar. (*McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325; *Knox* v. *Eden Musee Co.*, 148 N. Y. 441; *Page* v. *Clark*, 100 Misc. Rep. 395.) Regardless of whether the law of Maine is consistent with the Personal Property Law the defendants-appellants and respondents obtained no property rights in the stolen certificate because the conceded forgery and alteration rendered the certificate void in the hands of any subsequent holder. (*Meyer* v. *Huneke*, 55 N. Y. 412; *Columbia Distilling Co.* v. *Rech*, 151 App. Div. 128; *Booth* v. *Powers*, 56 N. Y. 22; *Hauswald* v. *Katz*, 216 App. Div. 92.) Even though the alteration and forgery invalidated the certificate in the hands of any subsequent holder, it does not follow that in its altered condition the certificate could not be the subject of conversion by the defendants-appellants and respondents or that the plaintiff was not substantially damaged by such conversion. (*Boyce* v. *Brockway*, 31 N. Y. 490; *Mutual Trust Co.* v. *Merchants Nat. Bank*, 236 N. Y. 478; *Pierpont* v. *Hoyt*, 234 App. Div. 205; 260 N. Y. 26.)

*Donald A. Gray, Oscar R. Houston* and *G. Arthur Blanchet* for defendants-appellants and respondents. The Appellate Division properly sustained the judgment of the trial court that when the certificate came into the hands of the defendants-appellants and respondents it was practically a valueless thing, since the certificate was materially altered, forged and void. (*Slingsby* v. *Westminster Bank, Ltd.*, [1931] 2 K. B. 583; *New York Title & Mortgage Co.* v. *First Nat. Bank*, 51 Fed. Rep. [2d] 485; 284 U. S. 676.) The law of the State of Maine is consistent with article 6 of the Personal Property Law. (*Gruntal* v. *United States Fidelity & Guaranty Co.*, 254 N. Y. 468; *Turnbull* v. *Longacre Bank*, 249 N. Y. 159.)

*Edward A. Coleman* for Louisa Kohl, defendant-respondent. The defendants-appellants and respondents were not aggrieved by the judgment in their favor and against the defendant-respondent. (*Municipal Service*

*Real Estate Co.* v. *D. B. M. Holding Co.,* 232 App. Div. 183; *Marsh* v. *Standard Accident Ins. Co.,* 141 Misc. Rep. 484; *Munson Realty Co.* v. *Melrose Bond & Mortgage Corp.,* 232 App. Div. 832; *Hooper* v. *Beecher,* 109 N. Y. 609.)

HUBBS, J. On February 7, 1929, the brokerage firm of Moore & Schley was the owner of record of a certificate representing one hundred shares of the capital stock of the Electric Power and Light Corporation, a Maine corporation. The certificate was issued in its name and was numbered 42510. It indorsed the certificate in blank and sent it by a messenger for delivery to a customer. The certificate was stolen from the messenger.

The appellant, United States Fidelity and Guaranty Company, had issued to Moore & Schley a bankers' blanket bond, indemnifying that company against loss by theft, and upon demand it paid to that company $5,843.75, the conceded market value of the stolen certificate. Moore & Schley then applied to the Guarantee Trust Company, the transfer agent, for the issuance of a duplicate certificate, which was issued upon the delivery of an indemnity bond to the transfer agent, executed by Moore & Schley as principal and the United States Fidelity and Guaranty Company as surety. The duplicate was issued to the firm of Moore & Schley and indorsed by it to the United States Fidelity and Guaranty Company, which surrendered it to the transfer agent and had issued to it in its name a new certificate, No. 50599.

About two months later the stolen certificate came into the possession of the defendant brokerage firm of Newburger, Henderson & Loeb (hereafter referred to as Newburger). It received the stolen certificate from the defendant Gleason, who had received it from the defendant Kohl, who claimed to have taken it as collateral security for a loan. At the time when Newburger received the stolen certificate, it had been altered and forged by erasing the name Moore & Schley from the face thereof

and inserting the name " Otto Schmidt " and indorsing on the back the name Otto Schmidt, just above the genuine signature of Moore & Schley. Newburger presented the stolen certificate thus forged and altered to the Guarantee Trust Company, the transfer agent, for transfer. Although the books of the company showed that no certificate had been issued in the name of Otto Schmidt and that certificate No. 42510 still stood in the name of Moore & Schley, the transfer agent canceled the stolen certificate and issued a new one in the name of Newburger. That caused an overissue of the stock of the electric company. When that was discovered by the transfer agent, it demanded from the plaintiff the surrender of the certificate for one hundred shares which had been issued to it and the plaintiff surrendered to the transfer agent that certificate. The plaintiff then demanded of Newburger the stolen certificate or its proceeds. The demand was refused and this action was brought in conversion. At that time plaintiff, which had paid to Moore & Schley $5,843.75 under its agreement to indemnify against damage by reason of theft, was out the money paid and the stock which it had received from Moore & Schley because of such payment and Newburger was in possession of a certificate for one hundred shares which had been issued by the transfer agent upon the surrender of the stolen certificate.

The trial court found in favor of the plaintiff upon the issue of conversion, but decided that the stolen certificate was without value when received by Newburger, as the new certificate, at that time in the possession of plaintiff, evidenced the real ownership of the stock. Judgment was entered in favor of the plaintiff for six cents damage and in favor of Newburger for a like amount against Gleason and Kohl, who had been impleaded. Plaintiff and defendant Newburger each appealed to the Appellate Division where the judgment was unanimously affirmed.

Plaintiff contends that it is entitled to receive from Newburger the sum of $5,843.75 which concededly it has lost by reason of the payment of the market value of the stolen certificate to Moore & Schley. When plaintiff, by reason of its indemnity agreement with the firm of Moore & Schley, paid it the market value of the stolen certificate, its entire interest passed to plaintiff and because of that interest, plaintiff ultimately came into possession of the certificate which it was compelled to surrender after the stolen certificate was surrendered by Newburger to the transfer agent and the fact that it was a stolen certificate was discovered by the transfer agent.

The only certificate in existence when the plaintiff made a demand on Newburger was the certificate which had been issued by the transfer agent to Newburger in place of the stolen certificate.

Newburger, by accepting the stolen certificate of stock, did not obtain title to it as against the true owner, Moore & Schley. The owner had a right to recover possession of the certificate from whoever came into possession of it. The right which it possessed passed to the plaintiff.

In the eyes of the law, the certificate of stock which Newburger received from the transfer agent for the surrender of the stolen certificate stood in place of the stolen certificate and Newburger had no more right to retain it as against the true owner than he would have had to retain the stolen certificate if it had still remained in its possession.

When Newburger, upon the demand of the plaintiff, refused to surrender the possession of the certificate of stock which had been issued to it in place of the stolen certificate, such refusal constituted a conversion of the stock itself and made Newburger liable for the damages resulting from such conversion. Those damages consisted of the market value of the certificate of stock. (*Pierpoint* v. *Hoyt*, 260 N. Y. 26.)

Not only was Newburger liable in conversion after demand, but it was also liable for conversion of the stolen certificate before demand. When Newburger surrendered the stolen certificate to the transfer agent for cancellation, and accepted therefor a new certificate issued in its own name, it exercised dominion and control over the stock evidenced by the certificate and assumed to be the owner thereof and was thereby estopped to deny the natural consequence of its act.

Its act of ownership was inconsistent with the ownership and dominion of the true owner. (*Pease* v. *Smith*, 61 N. Y. 477; *MacDonnell* v. *Buffalo Loan, Trust & Safety Deposit Co.*, 193 N. Y. 92.)

The surrender of the stolen certificate for cancellation and the acceptance of a new certificate in its place was equivalent to a sale of the stolen certificate and constituted a conversion thereof. (1 Street on Foundations of Legal Liability, p. 238; *Pease* v. *Smith, supra; Caywood* v. *Van Ness*, 74 Hun, 28; affd., 145 N. Y. 600. Cf. *Mahaney* v. *Walsh*, 16 App Div. 601.)

It is contended, however, that even though the acts of Newburger constituted a conversion of the stock, it is only liable for nominal damages because Moore & Schley had secured a duplicate certificate from the transfer agent before the stolen certificate came into the possession of Newburger. True it is that Moore & Schley had obtained a duplicate certificate, but only upon condition of indemnifying the transfer agent. When the transfer agent discovered that the stolen certificate had been surrendered to it and a new certificate had been issued in its place, it required the plaintiff, which stood in the place of Moore & Schley, to return for cancellation the certificate which had been issued to it. Thereafter, the new certificate issued to Newburger, in its name, was the only outstanding certificate which had been issued in place of the stolen certificate. To say that the stolen

certificate when it came into the possession of Newburger was a " valueless thing " is to disregard the realities.

The result of the whole transaaction was that the plaintiff, as assignee of Moore & Schley, was left without the stock or its value and Newburger was in possession of the only outstanding certificate which it had obtained by the conversion of the stolen certificate and which it now contends it is entitled to retain upon the payment of six cents damages. That cannot be. Newburger, by its own wrong, has the proceeds of the true owner's property which is of considerable value and proposes to keep it without compensation to the true owner or its assignee. The statement of the proposition refutes the contention. (Cf. *Jackins* v. *Bacon*, 63 Cal. App. 463.)

It mattered not that the certificate had been forged and altered before possession of it was received by Newburger. That it had value to Newburger is conclusively established by the fact that by its exchange for a new certificate Newburger ultimately obtained the only outstanding certificate for one hundred shares of stock issued in place of the stolen certificate.

This action is governed by the common law which entitled the owner of a stolen stock certificate to recover from one who had taken it without notice of the theft in the ordinary course of business. (*Knox* v. *Eden Musee Americain Co.*, 148 N. Y. 441.)

The rule has not been changed, under the facts in this case, by article 6 of the Personal Property Law (Laws of 1913, ch. 600; Cons. Laws, ch. 41), which provides that under certain circumstances, the delivery of a certificate of stock may transfer title though made by one having no right to possession or authority from the owner to make the transfer.

That statute applies only to certificates of stock of a corporation organized under the laws of this State, " or of another state whose laws are consistent with this act." (§ 183.) The certificate in question was of a corporation organized under the laws of the State of

Maine. That State does not have an act consistent with our statute and our act is not, therefore, applicable.

The judgment should be modified by directing judgment in favor of the plaintiff against the defendants-appellants-respondents for $5,843.75, with interest, and with costs in all courts, and judgment over against the two impleaded defendants-respondents in favor of the defendants-appellants-respondents for the same amount.

LEHMAN, J. (dissenting). The action is brought for the conversion of the original certificate of stock owned by the firm of Moore & Schley, and the plaintiff at the close of its evidence obtained leave to amend the complaint to make clear that the action was not for conversion of the new certificate issued to the defendants. Neither pleadings nor proof would support a judgment for the conversion of the new certificate issued to the defendant brokers through the mistake of the corporate transfer agents. At the time the defendants converted the original certificate it no longer embodied or evidenced the rights of any stockholder and even a purchaser in good faith acquired no rights to any stock. Neither the conversion of the original stock certificate nor the issuance to the defendant brokers of a new certificate deprived Moore & Schley of their title to the corporate stock, or to the substituted certificate which even before the conversion by the defendant brokers had been issued to Moore & Schley. Moore & Schley were indirectly damaged by the issuance of the new certificate to the defendant brokers because they had chosen to give to the corporation as a condition for the issuance of a new certificate to them, a bond of indemnity against damages caused by " the issuance of a duplicate or duplicates in lieu (of the stolen certificate) * * * whether or not caused by, based upon or arising out of inadvertence, accident, oversight or neglect on the part of the obligees or their respective officers, agents, clerks and employees." Since, however, no act done by the defendant brokers

with respect to the stolen certificate in any wise affected the right or title of Moore & Schley to the certificate of stock which had been issued to them in place of the old certificate, Moore & Schley were damaged by their own act in giving the indemnity bond but not by the defendant brokers' technical conversion of the original certificate. The judgment should, therefore, be affirmed.

POUND, Ch. J., CRANE, O'BRIEN and CROUCH, JJ., concur with HUBBS, J.; LEHMAN, J., dissents in opinion, in which KELLOGG, J., concurs.

Judgment accordingly.