AMERICAN SURETY COMPANY OF NEW YORK v. VERNA M. CUNNINGHAM.[1]

September 3, 1937.

No. 31,259.

[1]Reported in 275 N. W. 1.

 

*Ina D. Anderson,* for appellant.
*Lewis, Grannis & Underhill,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Appeal from an order of the district court denying defendant's alternative motion for judgment notwithstanding the verdict or for a new trial.

In 1930 defendant purchased through the First and American National Bank of Duluth 100 shares in Standard Oil Shares, Inc., an investment trust. The Empire Trust Company of New York City, the trustee and transfer agent of that corporation, issued to her certificate C2061 for that amount of stock. The certificate nowhere stated that it was issued to her but provided that it was the property of the bearer; that it represented a proportionate interest in the property of the corporation; that title to the certificate was transferable by delivery merely in the same manner as a negotiable instrument payable to bearer; that any holder, regardless of the manner in which he acquired possession, might transfer absolute title to any *bona fide* purchaser for value; that the title of such purchaser would be recognized by all prior holders; and that the trustee might treat the bearer as absolute owner. Defendant never indorsed the certificate.

About December 28, 1931, while carrying the certificate in an envelope bearing her name and address, defendant lost it on a public street in Duluth. After a search failed to locate it, she reported its loss to the bank through which she purchased it, and the officers of that institution notified the Empire Trust Company and stock dealers generally in this state.

Soon afterward defendant made application to plaintiff for a bond covering lost securities. The application was accepted and the bond issued to the Empire Trust Company as obligee in March, 1932. The latter then issued a new certificate, C3040, to defend-

ant and placed a stop transfer order against the lost certificate.

The lost certificate next appeared in the hands of one Holton, who sold it March 30, 1933, through the agency of Wells-Dickey Company of Minneapolis to Burr & Company of Chicago. There were subsequent transfers of the certificate before it was presented April 18, 1934, to the Empire Trust Company by H. P. Hayden & Company of Chicago for transfer. It was not honored, and the Empire Trust Company gave preliminary notice of the reappearance of the lost certificate to plaintiff.

Since the certificate could not be transferred on the books of the transfer agent, under stock exchange rules it did not constitute good delivery, and it was returned from transferor to transferor in accordance with mercantile custom (see Gruntal v. U. S. F. & G. Co. 254 N. Y. 468, 173 N. E. 682, 73 A. L. R. 1337; Meyer, Stock Brokers and Stock Exchanges, § 130) until it was returned to Wells-Dickey Company with a sight draft for the then market value of the stock attached. This was honored by Wells-Dickey Company as it was bound by stock exchange rules to do. Wells-Dickey Company was reimbursed for this payment by the St. Paul Mercury Indemnity Company, its insurer against loss from handling lost or stolen certificates, which then acquired all the insured's rights.

July 5, 1934, the certificate was again presented, this time by Wells-Dickey Company. The transfer agent inquired of plaintiff as to the action to be taken. Plaintiff instructed the Empire Trust Company to decline to honor the certificate on the ground it could not do so until the stop transfer order was removed. The Empire Trust Company had previously informed defendant that as long as the bond was on file her certificate and not the lost certificate would be honored. July 6, 1934, the transfer agent gave plaintiff formal notice of the presentation of the lost certificate and demanded indemnity.

The St. Paul Mercury Indemnity Company threatened to bring suit to compel transfer of the lost certificate on the ground that Wells-Dickey Company had good title to the certificate as a *bona fide* purchaser. Plaintiff gave notice of this to defendant, further stating that the claim was valid, that because of that fact it would

not undertake the expense of defending a suit to which there was no defense, and demanded that defendant surrender her duplicate certificate or put plaintiff in funds to purchase the lost certificate so that one or other of the certificates might be surrendered to the transfer agent and plaintiff discharged of its liability as surety.

At no time did plaintiff offer to contest the title of Wells-Dickey Company or its insurer to the original certificate or to give defendant any opportunity to assert her title to said certificate under the indemnity provisions contained in the application and in the bond, but instead purchased the lost certificate and surrendered it to the Empire Trust Company, by which it was canceled and cremated. Neither does it appear that defendant ever requested plaintiff to litigate ownership to the original certificate or offer to supply the surety with funds for that purpose.

Defendant denied that Wells-Dickey Company was a holder in due course of the original certificate and refused to purchase it from that company for delivery to the Empire Trust Company. Plaintiff, after purchasing the certificate from the St. Paul Mercury Indemnity Company, surrendered it to the Empire Trust Company, where it was canceled and cremated and the surety released on its bond. Thereafter plaintiff brought suit for the amount paid for it. The trial court directed a verdict for plaintiff for that sum.

Two issues are presented for decision on this appeal: (1) Under the terms of the application for bond and of the bond, was defendant obliged to acquire and surrender the lost certificate to the obligee upon its reappearance regardless of the title of the holder; and (2) if the principal under the bond was obligated to acquire and surrender the lost certificate only upon its reappearance in the hands of a person having good title to it, did Wells-Dickey Company have such title?

■ In the application for bond covering lost securities defendant agreed to pay a premium for the life of the bond unless the lost certificate should reappear and claim be made on the surety; in that event defendant contracted to pay an annual premium in the same amount from the date of such claim. Defendant agreed to save the surety harmless from and indemnify the surety against

all claims; to place the surety in funds to meet all claims and judgments before it should be required to pay; to defray all expenses in the prosecution or defense of any legal proceedings in which defendant should request the surety to take part; and to turn over to the surety the lost certificate if it should ever come into her possession. Plaintiff reserved to itself all the rights, remedies, and defenses of a surety without compensation, "including the right to secure its discharge from its suretyship, in the absence or default of the principal," and the power to exercise all the rights of the principal.

The bond is stated to be given in consideration of the issuance by the obligee to defendant of a duplicate certificate in place of the lost or stolen certificate. In case of default under the bond principal and surety agree to make indemnity. The conditions of the bond are that if the principal shall deliver the lost certificate, upon its reappearance, to the obligee for cancellation, and if the principal shall "defend, indemnify and save harmless" obligee against all claims and suits, and from all losses or expenses arising out of the issuance of the duplicate certificate or the transfer of the original or of the duplicate certificate the bond shall be void; otherwise it shall continue in full force and effect.

The surety reserved the right to secure its discharge as surety "in the absence or default of the principal." The surety cannot take up a lost certificate and discharge itself of its liability and recover of the principal the amount it paid to secure its discharge when the principal is not in default. A surety may recover of his principal the amount he has paid under compulsion in discharging a valid obligation of his principal; but a surety may not discharge a claim for which his principal is not liable and to which the surety may assert the same defense, and then recover of his principal what he has paid. Stearns, Law of Suretyship (4 ed.) § 284; 50 C. J. p. 252, § 411. The principal here is not in default if the obligee is under no liability to the holder of the lost certificate.

A corporation is obliged to issue a duplicate certificate to one who proves his ownership to a certificate which has been lost or stolen when an indemnity bond is furnished. The presumption that

the holder of a lost certificate is the owner thereof is rebutted by the filing of such bond and proof with the issuing corporation. If the lost certificate is later presented, the corporation should withhold recognition of it; and if suit is brought to compel transfer the corporation should refer the defense of the suit to the obligors on the bond. If the corporation honors the lost certificate without the consent of the surety and principal or without a judicial determination of title to the certificate, then it cannot deny the right of the holder of the duplicate certificate to a share in the corporation, nor seek indemnity against the obligors unless it can prove that the holder of the lost certificate had good title to it and that the corporation was bound to honor it. La Belle Iron Works v. Quarter Sav. Bank, 74 W. Va. 569, 82 S. E. 614; Greenleaf v. Ludington, 15 Wis. 558, 82 Am. D. 698; Christy, Transfer of Stock, § 278. It is evident from the terms of the application for bond covering lost securities and of the bond, as well as the conduct of the parties after the reappearance of the lost certificate, that this was the status of rights and duties they contemplated. Upon the reappearance of the certificate, defendant might have brought an action against a holder without title for conversion (U. S. F. & G. Co. v. Newburger, 263 N. Y. 16, 188 N. E. 141), but it is clear that the parties also intended defendant to have the right to rely on her bond and compel the holder to prove his title to the certificate.

While defendant's application for bond contained a provision giving the surety a right to secure its discharge from its suretyship in the absence or default of the principal, it does not seem to us that it was ever contemplated by either principal or surety that the latter might relieve itself of its suretyship by purchase and surrender of the lost certificate regardless of the title of the holder and regardless of the manner in which possession thereof was acquired by him. Such construction would require defendant to purchase the certificate from the finder if lost, or the thief if stolen, for surrender to the transfer agent; in case of her failure or refusal to do so the surety would have the right to purchase or otherwise acquire it and hold the obligor on the bond for the amount paid.

The application calls for the payment of a premium of $19.50 for the life of the bond unless the securities referred to therein shall reappear and claim be made on the surety, in which event the indemnitor agreed to pay a further annual premium of the same amount on the date of such claim and on its anniversary every year thereafter until the cancellation of the bond. If the surety company, when the bond was written, intended to acquire the right to procure possession of the missing certificate in the absence of authority from the indemnitor, there would have been no occasion for providing in the bond for additional annual premiums; nor would there have been occasion for the further requirement of additional indemnity, including counsel fees, for litigation undertaken by the surety in defense of the principal, as all that would be necessary would be the arbitrary acquisition of the lost certificate by the surety and delivery of it to the transfer agent. The provisions in the application with reference to the indemnifying of the surety and saving it harmless from claims and losses, including counsel fees, do not indicate an intention of the parties to the bond that the indemnitor was to be deprived of all right to require the holder of the lost certificate to show title thereto. Nor does the wording of the bond itself indicate an intention of the parties thereto to deprive indemnitor of that right.

Whether the surety company would have been required to litigate title to the certificate without a demand therefor on the part of the indemnitor under the provisions of the application reading, "and in case the Indemnitor requests the Surety to join in the prosecution or defense of any legal proceeding, the Indemnitor will, on demand of the Surety, place it in funds sufficient to defray all expenses and all judgments that may be rendered therein," we need not decide because the surety declined to defend by its letter of September 20, 1934, to its Duluth agent, which was called to defendant's attention, arbitrarily stating that there was no defense. It appears to us that there was an issue as to whether the provision in the application just referred to was waived by the surety.

Since the surety may not recover in the absence of defendant's default, and since defendant is not in default unless the obligee

became liable to the holder of the lost certificate upon its presentation, proof that Wells-Dickey Company had good title to the lost certificate was vital to plaintiff's case.

■ Did Wells-Dickey Company or its insurer acquire good title to the lost certificate? If it did, no harm could have resulted to defendant because of the verdict directed against her upon the erroneous theory that the surety, upon the refusal or failure of defendant to acquire the original certificate and to surrender it for cancellation, had the arbitrary right to acquire it for the same purpose. Even though plaintiff did not have that right, it at least had the right to acquire and surrender the lost certificate if held by one who had title. Was the evidence in this case such that it was established as a matter of law that Wells-Dickey Company was a holder in due course, and as such entitled to a transfer of the certificate on the books of the transfer agent? If so, further litigation would be useless.

At common law the owner of a stock certificate was estopped to assert his title where, because of negligence or misplaced trust, he clothed with the indicia of ownership one who sold it to an innocent purchaser. Joslyn v. St. Paul Distilling Co. 44 Minn. 183, 46 N. W. 337. But the owner of a stock certificate was not estopped from asserting his title against a *bona fide* purchaser where the certificate had been lost or stolen from him. Schumacher v. Greene Cananea Copper Co. 117 Minn. 124, 134 N. W. 510, 38 L.R.A.(N.S.) 180, 28 Ann. Cas. 1115; Knox v. Eden Musee Americain Co. 148 N. Y. 441, 42 N. E. 988, 31 L. R. A. 779, 51 A. S. R. 700; 13 Minn. L. Rev. 272; 73 A. L. R. 1398.

Under the uniform stock transfer act (L. 1933, c. 331, 3 Mason Minn. St. 1936 Supp. §§ 7492-71 to 7492-96) an innocent purchaser in good faith for value of a stock certificate indorsed in blank by the person appearing thereon to be the owner, or of a stock certificate accompanied by a written assignment or power of attorney indorsed in blank by such person, gets good title although the certificate be lost or stolen. L. 1933, c. 331, §§ 1, 5, 7; Jenkins v. Continental Trust Co. 150 Md. 416, 133 A. 610; Peckinpaugh v. H. W. Noble & Co. 238 Mich. 464, 213 N. W. 859, 52 A. L. R. 941;

Jackson v. Peerless Portland Cement Co. 238 Mich. 476, 213 N. W. 863; Turnbull v. Longacre Bank, 249 N. Y. 159, 163 N. E. 135; 6 U. L. A. §§ 1, 5, 7. Stock certificates are not negotiable at common law and are made negotiable only by operation of the uniform stock transfer act. If the holders subsequent to Holton and prior to Wells-Dickey Company acquired title by negotiation, then Wells-Dickey Company acquired good title to the lost certificate by purchase under compulsion from the prior holders. Gruntal v. U. S. F. & G. Co. 254 N. Y. 468, 173 N. E. 682, 73 A. L. R. 1337.

The law of the situs of a stock certificate at the time of its transfer determines the rights of the parties to it. Direction Der Disconto-Gesellschaft v. U. S. Steel Corp. 267 U. S. 22, 45 S. Ct. 207, 69 L. ed. 495; Kerr v. Urie, 86 Md. 72, 37 A. 789, 38 L. R. A. 119, 63 A. S. R. 493; Mylander v. Page, 162 Md. 255, 159 A. 770; Barstow v. City Trust Co. 216 Mass. 330, 103 N. E. 911; Pilger v. U. S. Steel Corp. 102 N. J. Eq. 506, 141 A. 737; 9 Minn. L. Rev. 661; Restatement, Conflict of Laws, § 53b; 1 Beale, Conflict of Laws, § 53.1; Christy, Transfer of Stock, § 66. Where the situs of the stock certificate at the time of transfer is another jurisdiction and no proof is made at the trial as to the law of that jurisdiction, the common-law rule applies. Barstow v. City Trust Co. 216 Mass. 330, 103 N. E. 911.

To determine title to a certificate, the law of the situs of the certificate at the time of its transfer will apply the common-law rule or the rule of the uniform stock transfer act according to settled rules. If the transfer act is in effect at the situs it will be applied to certificates of corporations domiciled in jurisdictions where that act is in force. L. 1933, c. 331, § 22. Although the act in this state does not apply to stock certificates issued prior to July 1, 1933 (L. 1933, c. 331, § 23), it may be that a stock certificate issued by a corporation organized in a jurisdiction where the uniform stock transfer act is in force at the time of issuance retains the virtue of negotiability in any other jurisdiction whether or not the uniform stock transfer act has been adopted or become effective in that jurisdiction. See Restatement, Conflict of Laws, § 53d; Christy, Transfer of Stock, § 66. But the common-law rule applies

in any case, whether or not the uniform stock transfer act is in effect in the situs at the time of transfer, to stock certificates issued by a corporation organized in a state where that act has not been adopted. Casto v. Wrenn, 255 Mass. 72, 150 N. E. 898; U. S. F. & G. Co. v. Newburger, 263 N. Y. 16, 188 N. E. 141; L. 1933, c. 331, § 22, definition of "certificate." In the absence of proof that the law of the jurisdiction in which the issuing corporation is chartered confers negotiability on stock certificates, the law of the situs applies the common-law rule. Lavien v. Norman (C. C. A.) 55 F. (2d) 91. No proof was made at the trial as to the law of the situs of the lost certificate at the time of its transfers nor of the existence of the uniform stock transfer act in the jurisdiction of the domicile of the corporation. The common-law rule therefore applies. Under the common-law rule no title passes to an innocent purchaser in good faith for value of a lost certificate. Cases cited *supra*.

The certificate provides that all rights and duties of the parties shall be governed by the law of the state of New York. Assuming that title to the certificate is controlled by the law of that jurisdiction, no proof was made as to the effect of that law in this case other than the conclusion of a New York attorney that Wells-Dickey Company got good title to the lost certificate. Such a conclusion without testimony as to the grounds on which he based his belief is insufficient.

But taking cognizance of the fact, for the purpose of argument, that the uniform stock transfer act is in effect in New York, 40 Consolidated Laws New York, Ann. (Personal Property Law) §§ 162-185, it does not follow that the lost certificate was negotiable. That act applies to a transfer of a certificate indorsed in blank by the person appearing thereon to be the owner. L. 1933, c. 331, §§ 1, 4, 5, 6, 7; N. Y. Pers. Prop. Law, §§ 162, 165, 166, 167, 168. Delivery of an unindorsed certificate gives the holder of the certificate a right to have the transfer completed by indorsement only where delivery is made by the person appearing on the certificate to be the owner thereof with intent to transfer. L. 1933, c. 331, §§ 9, 10; N. Y. Pers. Prop. Law, §§ 170, 171. The uniform stock transfer act operates to pass an interest in or title to a stock

certificate only when the certificate or the transaction comes within its terms. Edgerly v. First Nat. Bank, —— Mass. ——, 197 N. E. 518. It nowhere appears on this certificate that any certain party is the owner; defendant, the true owner, never indorsed it. Since it does not so much as approach compliance with the terms of the transfer act, that part of the law of New York would not operate to pass title. The act provides that in cases not provided for "the rules of law and equity including the law merchant" shall govern. L. 1933, c. 331, § 18; N. Y. Pers. Prop. Law, § 179. No rule making this certificate, which plaintiff's witness testified was unusual in form, negotiable has been shown.

Since Wells-Dickey Company acquired no title to the stock certificate by operation of law, did it acquire title to the certificate by virtue of the contract contained in the stock certificate that every holder of the certificate agreed to recognize the title of every subsequent holder in good faith for value. This provision is patently for the protection of the corporation and its transfer agent. Since the promisee under this contract (the Empire Trust Company) is under no duty or obligation to subsequent *bona fide* holders for value unless that person has good title by operation of the law, no consideration for the undertaking of the promisor (defendant) flows from Wells-Dickey Company, which could not enforce it against either defendant or the transfer agent. 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 1896.

We reach the conclusion that there was an issue whether Wells-Dickey Company or its insurer was a holder having title and that the trial court should not have directed a verdict for plaintiff. The case of Colonial Trust Co. v. Fidelity & Deposit Co. 144 Md. 117, 123 A. 187, relied on by plaintiff is not decisive. That case arose on demurrer. The complaint alleged that negotiable certificates of debt were in the hands of a holder in due course, and this was admitted by the demurrer. Here the title of Wells-Dickey Company was denied. Whether that company was a holder in due course is in issue.

New trial granted.