FIDELITY & CASUALTY CO. OF NEW YORK, Plaintiff,

v.

FIRST NATIONAL BANK IN FORT LEE, Defendant and Third-Party Plaintiff,

v.

W. E. HUTTON & CO., Third-Party Defendant.

Civ. A. No. 1367–72.

United States District Court, D. New Jersey.

Feb. 4, 1975.

Louis Auerbacher, Jr., Newark, N. J., for plaintiff.

Andrew T. Berry, McCarter & English, Newark, N. J., for defendant and third- party plaintiff.

Mark F. Hughes, Jr., Kraft & Hughes, Newark, N. J., for third-party defendant.

## OPINION AND ORDER

WHIPPLE, Chief Judge.

This is a motion by plaintiff for oral re-argument and reconsideration of W. E. Hutton's prior motion for summary judgment dismissing the complaint, or in the alternative, for leave to add Walston & Co. as additional party plaintiff and to amend the complaint. This Court reserved decision on Hutton's prior motion because the extent of loss, if any, suffered by Walston was unclear. A thirty day period was given to the parties for additional discovery.

In support of this motion, plaintiff has submitted an affidavit revealing additional evidence which it contends "is sufficient to warrant the denial of third-party defendant's motion or, at least, to provide defendant an opportunity to have such issues resolved on trial . . . ."

Frank E. Cyrs, the authorized claim and adjustment agent of the Fidelity & Casualty Co., explains in his affidavit that on the date of loss, Walston had in force a Stockholder's Blanket Bond, issued by the Fidelity & Casualty Co. of New York, pursuant to which Fidelity & Casualty agreed to indemnify Walston, among other things, against the loss of securities by theft, misappropriation or disappearance. In case of loss, Fidelity & Casualty was obligated to either pay to Walston the cash value of said bonds, or, in the alternative, replace the stolen bonds with others of like nature. Walston made claim under the aforementioned policy, subject to its $25,000 deducti-

ble interest, and in lieu of making a cash payment to Walston for the loss of securities, Fidelity & Casualty replaced the bonds with other bonds of a like nature in full satisfaction of Walston's claim.

Fidelity & Casualty, however, did not pay for the replacement of the converted bonds. Instead, it made an arrangement with the issuer of the bonds to obtain similar bonds to satisfy Walston's claim. It did this by executing a "sole obligor bond", which allowed the issuer to "over issue" the bonds beyond those authorized and give the same to Fidelity & Casualty with the express provision that payment for same was not then required. However, if the stolen bonds were presented by a bona fide purchaser, the Fidelity & Casualty Co. would either have to return the "over-issued" bonds or purchase similar bonds on the market and deliver them to the issuer so that the "over-issue" could be remedied.

Plaintiff claims that when it replaced the bonds stolen from Walston with others of like nature, it paid Walston in full just as clearly as it would have if it gave Walston the cash value of the stolen bonds. Having fully satisfied the $700,000 loss, Fidelity & Casualty claims subrogation to Walston's rights to the stolen bonds and contends that it is of no concern to Hutton how the replacement bonds were paid for or procured. The plaintiff submits that the "loss" which was sustained in this case is the loss of Walston for which claim was made on the Stockholder's Blanket Bond and payment was tendered by Fidelity & Casualty. Plaintiff further states:

> At some later date, Fidelity & Casualty will have to pay for the replacement bonds given to Walston, but that subsequent payment has nothing to do with the issues in this case. When Fidelity & Casualty eventually has to pay dollars to the issuer, if it cannot return the stolen bonds for cancellation, Walston will have to contribute its $25,000 deductible.

Cyrs, Affidavit at 17.

The Court must initially determine the question of whether the doctrine of subrogation will lie in a case where, as here, the insured has been made whole but the insurer has sustained no immediate loss. Subrogation is an equitable doctrine which is most often utilized when an insurer has indemnified an insured for damages sustained in accordance with the provisions of an insurance contract. The insurer, upon payment, is subrogated to any rights that the insured may have against a third-party who is liable for the damages. The theory behind this is that it is only equitable that the insurer should be reimbursed for his payment to the insured, since otherwise either the insured would be unjustly enriched by virtue of a recovery from both the insurer and the third-party, or, in absence of such double recovery by the insured, the third-party would go free despite his legal obligation in connection with the damages. *Standard Accident Ins. Co. v. Pellecchia*, 15 N.J. 162, 104 A.2d 288 (1954).

Subrogation is not an absolute right, but rather is applied pursuant to equitable standards and with due regard to the legal and equitable rights of others. *Gaskill v. Wales*, 36 N.J.Eq. 527, 533 (E. & A. 1883). Generally, the doctrine is based upon the principle that a benefit has been conferred upon the insured at the expense of the insurer. *See Crab Orchard Improvement Co. v. Chesapeake & Ohio Railway Co.*, 115 F. 2d 277 (4th Cir. 1940). In the case at bar, however, it is clear that although a benefit has been bestowed upon the insured (the replacement bonds), the insurer has incurred no present loss. It would therefore seem that the insurer cannot equitably be permitted to proceed against a third-party for the insured's loss. It is also clear, however, that the insured, having been made whole, cannot equitably be entitled to recover from a liable third-party. If neither party were allowed to proceed, a legally obligated third-party would escape liability—a result that is also inequitable. The Court

is therefore faced with a situation where it must balance the equities in order to determine the rights and liabilities of the parties in this action.

◼ In the present case, it seems that the most equitable result would be derived by giving a right of subrogation to the insurer. The insured has been made whole and it would be an unnecessary legal fiction to force it to proceed as party plaintiff and hold any potential recovery as constructive trustee for the insurer. Fidelity & Casualty Co., although sustaining no present loss, did replace the bonds to the insured by virtue of its promise to the issuer of the bonds to replace them if they appear in the hands of a bona fide purchaser. The insurer therefore has a superior right to proceed against a third-party wrongdoer, and will thus be subrogated to the rights of Walston.

◼ Under a subrogation theory, Fidelity & Casualty can have no rights superior to those possessed by Walston. *See Mayfair Fabrics v. Henley*, 101 N.J. Super. 363, 244 A.2d 344 (L.Div.1968). Walston has a valid cause of action for conversion against the defendants and such claim, by virtue of subrogation, inures to the benefit of Fidelity & Casualty. The purpose which the law seeks to accomplish by giving a right of action against one who converts is not to enrich the owner of the property at the expense of the wrongdoer, but to give compensation for the loss of property. In the present case, until the insurer pays some amount to cancel bonds that appear in the hands of a bona fide purchaser, no compensation is necessary, since no loss has been sustained. A recovery before such time would unjustly enrich the insurer.

This Court is troubled by the fact that none of the converted bonds has yet appeared in the hands of a bona fide purchaser and no one has yet sustained a pecuniary loss. The Court does not feel that it would be equitable to allow the insurer to fully recover the face value of the bonds in question when there is the possibility that the converted bonds might never be presented to the transfer agent. Further consideration has been given to the fact that if a full recovery were allowed, a possible market fluctuation would allow the insurer to purchase similar bonds at a lower price and return them to the issuer for cancellation. This again would constitute a windfall to the insurer which cannot be allowed under equitable principles.

◼ It is this Court's opinion that a subrogated insurer should not be allowed to recover from a wrongdoer claims which it may in the future be compelled to satisfy. *See Ocean Accident & Guarantee Corp. v. Hooker Electro-Chemical Co.*, 240 N.Y. 37, 147 N.E. 351 (Ct.App. 1925); 16 *Couch on Insurance* 2d § 61, at 39 (2d ed. 1966). Subrogation is based on payment and not on liability. *See Luce v. Fidelity & Casualty Co.*, 222 Wis. 50, 268 N.W. 131 (1936).

Plaintiff cites *United States Fidelity & Guaranty Co. v. Newberger*, 263 N.Y. 16, 188 N.E. 141 (Ct.App.1933), as having facts "strikingly similar to the case at bar." However, there are striking differences as well which make it clearly distinguishable. In that case, plaintiff insurance company paid the insured for the converted bond and at that point a new certificate was issued. Subsequently, the converted bond appeared requiring the insurer, "which stood in the place of the insured", to return the new certificate for cancellation. The insurer in that case suffered an out-of-pocket loss. No such expenditure has been shown in the present case.

◼◼ Having carefully reconsidered this matter and having had the benefit of additional briefs and oral arguments, it appears to this Court that the alleged conversion of stock in this case constituted a mere technical violation of plaintiff's rights since no actual damages have been shown. Because, at this point, only a nominal sum would be recoverable for this technical conversion,

the Court finds that the $10,000 jurisdictional amount necessary to bring on action in this Court has not been met. Although the parties have not raised the issue of jurisdiction, it is clear that this Court is not bound by the pleadings of the parties and may, on its own motion, inquire into the facts concerning jurisdiction. *Hoyt v. Merrit-Chapman & Scott Corp.*, 79 F.Supp. 106 (D.N.J. 1948); *Industrial Union v. New York Shipping Corp.*, 79 F.Supp. 104 (D.N.J. 1948); 2A J. Moore, *Federal Practice* ¶ 8.07 [1] at 1640 (2d ed. 1974).

██ Further, the district court has the power to evaluate a diversity case for the purpose of ascertaining the necessary jurisdictional amount prior to trial. Where sufficient information has been made available through pretrial discovery and proceedings, and potential damages do not bear a reasonable relationship to the minimum jurisdictional floor, the Court may make a pretrial determination that the action does not satisfy federal jurisdictional requirements. *Nelson v. Keefer*, 451 F.2d 289 (3rd Cir. 1971). In this case, the Court has heard oral arguments on two occasions concerning the issue of damages and has had the benefit of extensive pretrial discovery and briefs. This Court concludes to a legal certainty, based on the considerations found in *Nelson v. Keefer, supra*, that a recovery for technical conversion could not reach the $10,000 jurisdictional floor.

Therefore, the complaint in this matter is dismissed without prejudice. The Court has taken into consideration the fact that New Jersey provides for a six year statute of limitations in actions for conversion. The possibility of an action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, should be explored by plaintiff. *See The Gray Line Co. v. The Goodyear Tire & Rubber Co.*, 280 F.2d 294 (9th Cir. 1960).

So ordered.

No costs.