[No. 3542-5-III. Division Three. December 30, 1980.]

Russell B. Timms, et al, *Respondents,* v. Thomas W. James, et al, *Appellants.*

*Tom G. Cordell* and *Collins & Hansen,* for appellants.

*Robert A. Castrodale,* for respondents.

MUNSON, J.—Dr. James[1] appeals a judgment awarding damages to Dr. Timms for breach of contract. We reverse in part and remand for further proceedings on the issue of commercially reasonable resale of the collateral.

---

[1]Although the marital communities are parties to this action, we refer to the parties in the singular.

In 1973, Dr. Timms set up a dental practice in Grand Coulee, Washington, by purchasing dental equipment from Burkhart Dental Supply Company (Burkhart). This purchase, along with office expenses for 2 months, was financed by a $69,000 loan from Seattle–First National Bank (bank). Burkhart obtained a security agreement from Dr. Timms, cosigned his note at the bank, and assigned the security agreement to the bank.

In 1976, Dr. Timms decided to sell his now–active dental practice and move to Alaska. In April, he notified his patients his office was to close on June 30, the date on which he was ceasing his practice in Grand Coulee. In late August, Dr. James, a Tacoma dentist, contacted Dr. Timms having heard that the dental practice was for sale. Dr. Timms chartered an airplane and flew to Grand Coulee where the parties met to look over the office and equipment. They signed a preliminary sale agreement providing that Dr. James was to take over Dr. Timms' office, equipment and records and Dr. James would assume Dr. Timms' obligations for payment on dental equipment, rent and other expenses.

Thereafter, Drs. Timms and James flew to Yakima and talked to Burkhart and the bank. They signed an "Assignment of Interest in Conditional Sale Contract—Security Agreement" wherein the bank retained a security interest in the dental equipment; Burkhart and the bank consented to this assignment. Dr. Timms' liability had been reduced to approximately $45,000 by this time; he remained liable on the obligation.

Dr. James did not generate enough cash income from his practice to remain in business. After defaulting on his rent, the landlord locked him out of the office. Unable to continue his practice in Grand Coulee, Dr. James has since been practicing dentistry in Modesto, California. In January 1977, Burkhart paid the bank the $45,000 which was due at the time Dr. James defaulted. Ten months later in October 1977, Burkhart sold the dental equipment, which had remained in the Grand Coulee office, for $29,000 and

made demand upon Dr. Timms for the $16,000 deficiency. Dr. Timms borrowed the money from the bank, paid Burkhart, and then sued Dr. James for that amount. The trial court awarded Dr. Timms judgment; Dr. James appeals. We note four issues:

1. Dr. James contends there is no evidence the resale of the dental equipment was carried out in a commercially reasonable manner. Dr. Timms argues this contention was not pleaded as an issue. It was alluded to in the interrogatories, however, and argued without objection. No evidence was offered on the issue, either as to the proper notice being given or the reasonableness of the sale. There is testimony from Dr. Timms that the value of the equipment was between $35,000 and $40,000. Although the court made no specific finding as to the reasonableness of the sale, whether the sale was conducted in such a manner is an issue of fact. *Mount Vernon Dodge, Inc. v. Seattle–First Nat'l Bank,* 18 Wn. App. 569, 570 P.2d 702 (1977).

Pursuant to RCW 62A.9-504(3), a secured creditor has the burden of proving that resale of collateral was accomplished in a commercially reasonable manner. *Mount Vernon Dodge, Inc. v. Seattle–First Nat'l Bank, supra.* Dr. Timms, as the original debtor, stands in the shoes of the creditor, Burkhart. Dr. Timms could have asserted the lack of a commercially reasonable resale as a defense against Burkhart. Apparently he did not. We analogize Dr. Timms' position in this relationship to that of a surety—he is bound by the same instrument as Dr. James and answerable for the same debt in the event of Dr. James' failure to pay.

Thus, the question presented is, as between a surety (Timms) and principal debtor (James), upon whom does the burden fall to prove that the resale of collateral was done in a commercially reasonable manner? Although we find no authority directly on point, we hold the surety has this burden.

First, Dr. Timms, the surety, can stand in no better position toward Dr. James, the debtor, than Burkhart, the

creditor. This is in the nature of the surety's right to subrogation; the surety steps into the shoes of the creditor against whom the principal debtor has a valid defense. *United States Fidelity & Guar. Co. v. Worthington & Co.,* 6 F.2d 502 (5th Cir. 1925); A. Stearns *Suretyship* § 11.14, at 472 (5th ed. 1951).

Second, the surety's right to reimbursement extends only to the surety's payment of debts which the principal debtor actually owed. If the surety pays a debt which the principal debtor did not owe, *i.e.,* where the surety fails to assert the principal debtor's defense, the surety is merely a volunteer and cannot claim reimbursement. *See* Restatement of Security §§ 108(1)(a), 110 (1941). *See, e.g., American Sur. Co. v. Cunningham,* 200 Minn. 566, 275 N.W. 1, 112 A.L.R. 892 (1937). Generally, the burden of proving commercial reasonableness of resale is placed upon the creditor since the creditor is in the best position to know of and control the nature of the resale, and because the creditor is the one asserting the deficiency judgment. *See generally,* J. White & R. Summers, *Uniform Commercial Code* § 26-11, at 1122 (2d ed. 1980), citing *Mallicoat v. Volunteer Fin. & Loan Corp.,* 57 Tenn. App. 106, 415 S.W.2d 347 (1966). Here, since Dr. Timms was in the best position to assert commercially unreasonable resale against Burkhart, it is his burden to produce evidence the sale was made in a commercially reasonable fashion.

Since no evidence on this issue was produced at trial and the trial court evidenced a possible misunderstanding of the applicable burden of proof, we remand this matter to determine whether the resale of the dental equipment was carried out in a commercially reasonable manner.

2. Dr. James argued a failure of consideration, contending Dr. Timms had agreed to sell him an active ongoing practice, but instead sold him a closed, moribund business. Dr. James said Dr. Timms failed to inform him that all the patients had been notified in April to seek care elsewhere. Dr. James' pleadings also spoke in terms of misrepresentation.

The trial court in its oral opinion held that Dr. James had failed to sustain the burden of proof required for fraud, *i.e.*, clear, cogent and convincing evidence. Dr. James argues he should have been held only to the burden of proof necessary to establish the affirmative defense of failure of consideration, *i.e.*, a preponderance of the evidence. *See, e.g., Gillingham v. Phelps*, 11 Wn.2d 492, 119 P.2d 914 (1941).

It is clear the trial court found Dr. James had failed to meet *any* burden of proof. The court's findings of fact indicated only that Dr. James did not meet his burden. The court's oral opinion indicates Dr. James knew the office had been closed before he entered into the contract. This evidence sustains the court's finding that James did not establish his affirmative defense; his entry into the contract despite this knowledge indicates the parties intended to contract for exactly what Dr. James received. The court's finding is supported by substantial evidence. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

3. Acceleration of payments. Dr. James next argues the assignment of interest in the conditional sale contract he signed did not include an acceleration clause, and therefore Dr. Timms may sue only for those payments already accrued and not paid. *Llewellyn Iron Works v. Littlefield*, 74 Wash. 86, 132 P. 867 (1913). The assignment signed by Dr. James, however, expressly incorporated by reference the original agreement between Dr. Timms, the bank, and the dental supply company involved. The original agreement included an acceleration clause, pursuant to which it is proper for Dr. Timms to sue for all payments, past and future. Since we may affirm the trial court on any theory within the pleadings or proof, we do so. *Frontier Lanes v. Canadian Indem. Co.*, 26 Wn. App. 342, 347, 613 P.2d 166 (1980).

4. The court failed to give judgment to Dr. James on his counterclaim for conversion by Dr. Timms. This operated as a negative finding against Dr. James. *See McCutcheon v. Brownfield*, 2 Wn. App. 348, 467 P.2d 868 (1970).

On this question of fact, the trial court incurred no misapprehension of the applicable burdens of proof; it found against Dr. James and on this point we affirm.

While this case has been on appeal, *Tacoma Telco Fed. Credit Union v. Edwards,* 94 Wn.2d 666, 619 P.2d 363 (1980), has been decided. That decision has no effect on this case; it involves "consumer goods" as they are defined in RCW 62A.9-109(1), whereas this case involves "equipment" as defined in RCW 62A.9-109(2), a provision not included within the prohibition of a deficiency judgment described in RCW 62A.9-501(1).

Remanded for reconsideration in accordance with this opinion.

McINTURFF, A.C.J., and ROE, J., concur.

Reconsideration denied January 29, 1981.