ORPHA C. GILBERT, Appellee, v. C. C. BERRY et al., Appellees; CITIZENS SAVINGS BANK, Appellant.

**HOMESTEAD:** Foreclosure—Receivership. In the foreclosure of a mortgage on a homestead, a receiver may not be appointed to take possession of the property and collect the rents, even though the mortgage so provides, in the absence of a showing of (1) insolvency of the debtor, or (2) inadequacy of the security. *Whether, in view of Sec. 2976, Code of 1897, a receiver may be appointed when such showing is made, quaere.*

SALINGER, J., dissents.

*Appeal from Keokuk District Court.*—CHARLES A. DEWEY, Judge.

DECEMBER 20, 1920.

APPEAL by cross-petitioner because, though it was decreed

foreclosure of its mortgage against the Berrys, its application for a receiver was denied.—*Affirmed.*

*Stockman & Baker,* for appellant.

*Chas. C. Heninger,* for appellee.

EVANS, J.—I. The case involves the foreclosure of a mortgage upon a homestead. The mortgage provided for the appointment of a receiver to collect rents and profits of the mortgaged property, in the event of foreclosure. The one question presented to us is whether, upon the record before us, we can say that the trial court erred in denying the prayer of the appellant, as cross-petitioner, for the appointment of a receiver. Before proceeding to a discussion of that question, it is important that attention be first directed to the very state of the record. The appellant's foreclosure petition contained no allegation as a basis for the appointment of a receiver. The petition did contain a copy of the mortgage, and the prayer of the petition included a prayer for such appointment. Such prayer was not predicated upon any claim of insolvency, or waste or inadequacy of the security.

The answer of the mortgagors did plead the homestead right, and did aver the adequacy of the security, and denied the right of the mortgagee to a receiver.

Upon trial had, the district court entered a decree foreclosing the mortgage and awarding a special execution, but denying the appointment of a receiver. It is from this part of the decree that the cross-petitioner has appealed.

It does not appear from appellant's abstract that any of the evidence was preserved. Indeed, the fair implication of the abstract is that it was not preserved. The abstract does not purport to set out any of the evidence. It sets out only the pleadings and the decree and the notice of appeal. We must, therefore, assume a state of the evidence most favorable to the appellee. It should undoubtedly be deemed true, also, that the appellant adduced no evidence of the inadequacy of the security or the insolvency of his debtor. We agree that the case is not controlled by Section 3822 of the Code of 1897. If this section

were deemed controlling, it would be quite conclusive in favor of appellee. We agree, also, that this case must be considered in the light of the contractual stipulation of the parties. The general contention for appellant is that it contracted, by its mortgage, for the right to the appointment of a receiver; that the mortgagors were under no disability to make such contract; and that its provisions were, therefore, binding upon the court.

The general contention for the appellee is that, inasmuch as the contractual provision herein considered involved the right of occupancy of a homestead, its enforcement could not be had, except as a last resort, in case other remedies were shown to be inadequate. The exact question thus presented has never been directly passed upon by us heretofore. We have come close to the question in a number of our previous cases, and the trend of opinion of the court is quite manifest therefrom.

It is very clear that, if this were not a case involving a homestead, and if the rights of the mortgagee to a receiver rested upon Section 3822 alone, without any contract provision in the mortgage to that end, it would then be incumbent upon the applicant for a receiver to show appropriate grounds for the appointment. These grounds would include insolvency of the debtor and inadequacy of the security, and perhaps waste in some form. Are such requirements dispensed with by the contract provision, and is the mortgagee entitled, as a matter of legal right, to the appointment of a receiver by sheer force of the contract provision, and regardless of the application of any rule of equity? The question thus put may as well be narrowed to a case involving homestead, because such is the case before us, and because there is a statutory call upon the court to protect the homestead right, and to withhold it as the last asset to be subjected to the rights of a creditor. For the reasons hereinafter stated, we reach the conclusion that it was at least incumbent upon the cross-petitioner to show the insolvency of the debtor or the inadequacy of its security, in order to justify the court in terminating the right of occupancy, and in dispossessing the family from its homestead during the year of redemption. Nor do we mean to imply by this statement that, if such showing had been made, it would have justified such dis-

possession. That question we have no occasion now to deal with.

Under Section 2972 of the Code, the "homestead of every family * * * is exempt from judicial sale, where there is no special declaration of statute to the contrary."

Code Section 2976 provides:

"It [the homestead] may also be sold for debts created by written contract, executed by the persons having the power to convey, and expressly stipulating that it is liable therefor, but then only for a deficiency remaining after exhausting all other property pledged by the same contract for the payment of the debt."

The validity of the cross-petitioner's mortgage on this homestead is dependent upon Section 2976, as here quoted. Without this affirmative statutory permission, the mortgage would be ineffective to overcome the exemption provided in Section 2972. It will be noted that the permission or power to mortgage, conferred by Section 2976, is a qualified one. It forbids a judicial sale of the homestead except as a last resort, under the contract. The nonexempt property must first be subjected to the payment of the debt, before there can be a seizure of the homestead. If, in the case before us, the mortgage had included other property than the homestead, it would doubtless not be claimed that resort could be first had to the homestead. Suppose, in such a case, that the mortgagee should ask the appointment of a receiver to take possession of the homestead, could it be claimed that the contract proviso would override the statute, and subject the right of occupancy of the homestead instanter to the power of a receiver? If so, it would logically follow that such a right of possession by the receiver could be made to continue indefinitely, whereby the debt might be wholly collected through the possession of the homestead, without any resort to other property. This is so because, if the contract is mandatory, as appellant contends, then it *is* mandatory, and is beyond the operation of the rule of equity which obtains in the absence of a contract. We use this illustration only to show that the right of a husband and wife to pledge the homestead of their family as security for a debt is a qualified one, in that it is subject to the statutory limitation. It is the well-settled duty of a court of equity to protect the homestead right even when pledged

as security, in so far as it can protect the same consistently with
the ultimate right of the creditor to collect his debt. If we are
to say now herein that a court of equity must instanter, in
obedience to the mandate of a mortgage, oust a family from
its homestead and put the receiver in possession thereof, with-
out any inquiry whether such procedure is necessary to the
protection of the ultimate rights of the mortgagee, how can a
court hereafter deny the advance appointment of a receiver
for a homestead in any other case, even though the mortgage in-
clude abundant other security? If the mandate of the mortgage
is peremptory in *this* case, it must be deemed such in all cases.

We hold, therefore, that the mandate of the mortgage is
qualified by the statute, Section 2976, so far as a homestead is
concerned, and that an application to appoint a receiver to
take possession of a homestead is not to be granted as a matter
of course, in mere obedience to the mandate of the mortgage,
but is to be granted or denied according to the rules of equity,
and with appropriate regard for the provisions of the contract.
It necessarily follows that, in the absence of a showing by the
mortgagee in support of such application, it should not be
granted.

In considering this kind of a case, it is to be borne in mind
that the mortgagee's contract is essentially a contract for secur-
ity, and for nothing more. He acquires no legal right to the
property as such, nor is he injured by breach of any covenant
of the mortgage, if his security still be abundant. This is a
sufficient reason for saying that the mandate of the mortgage is
not peremptory. Where security includes a homestead, inter-
ference with the homestead right is to be the last resort, and not
the first. Occupancy is of the essence of the homestead right.
To terminate such occupancy by putting a receiver in posses-
sion before the termination of the year of redemption, and, in-
deed, before the sale under execution, without finding the ne-
cessity for such a course as a means of security, is to ignore the
limitation of Section 2976. For aught that appears in this case,
the mortgaged property had abundant value to fully secure the
mortgagee by the ordinary process of execution sale, subject to
redemption and to right of possession during the year of re-
demption. Assuming such a state of facts, as we must, upon

this record, it seems clear that we have no warrant for a reversal of the lower court.

As already indicated, the precise question herein involved has not heretofore been directly decided by us. But our decisions in cases bearing considerable similarity are sufficient to indicate the consistent trend of judicial opinion. *Paine v. McElroy,* 73 Iowa 81; *Swan v. Mitchell,* 82 Iowa 307; *Callanan v. Shaw,* 19 Iowa 183. For convenience of reference, we set forth in the next following division hereof excerpts from the above-cited cases.

II. In *Paine v. McElroy,* 73 Iowa 81, the mortgage contained the following:

"It is agreed that, in case of default in any respect, so that this mortgage can be foreclosed, the rents and profits of said premises, as well before as after the sale on execution, are pledged to the payment of the moneys secured thereby, and that, on the commencement of an action to foreclose this mortgage, the plaintiff shall be entitled to the appointment of a receiver, with the usual powers, to take and hold the rents and profits for the benefit of the plaintiff, and subject to the order of the court."

The lower court refused to appoint a receiver, and its action was sustained here. The real ground of the decision here was that the mortgage provided for the appointment of a receiver only at the time of the commencement of the suit, and did not provide for an appointment at the time of judgment. We quote from the opinion the following:

"We shall not stop to determine whether, under the statutes of this state providing that a morgtagor is entitled to redemption, there can be a receiver appointed during that period. See, however, *Myton v. Davenport,* 51 Iowa 583; *White v. Griggs,* 54 Iowa 650. In the latter case, it is said a party can 'have a receiver only of property on which he has a lien, and then only when there is danger of its being lost, or materially injured or impaired.' The Code so provides. (Section 2903.) Conceding, then, that the mortgage creates a lien on the rents and profits, it does not appear that they are being wasted, or that it can reasonably be apprehended that they will be. It does not appear that the mortgagor is insolvent, or that the mortgaged

property is not sufficient to fairly pay all the incumbrances thereon. Under such circumstances, we do not think a receiver could be appointed. (2 Jones on Mortgages, Section 1532.) It will be conceded that the sale for nonpayment of taxes, and the danger that a superior title may be obtained, is entitled to consideration, and there are some adjudged cases in which this fact seems to have been controlling, or, if not, influenced the court greatly. But we do not think it should be so regarded in this case, because the amount of the taxes does not appear. Such amount may be inconsiderable. Such presumption should be indulged under the presumption that error must affirmatively appear.''

In *Swan v. Mitchell*, 82 Iowa 307, the mortgage contained the following proviso:

''And it is also expressly stipulated and agreed between the parties hereto that, in the event of any failure to pay said sums of money, or any part thereof, or the interest thereon, when due and payable, or to perform any of the covenants as above provided, then the said second party shall be, and is hereby, authorized by himself or agent, at his option, to take immediate possession of said property, and remove all persons therefrom without process of law, or, upon giving said first parties five days' notice of such intention, said second party may commence an action of forcible entry or detainer, to recover the possession of said premises, and to rent or to cultivate the same, as he may deem best for the interest of all parties concerned, and shall be held liable to account to the first party only for the net profit thereof. It is also agreed that the taking possession thereof, as above provided, shall in no manner prevent or retard the second party in the collection of said sums by foreclosure or otherwise.''

The lower court appointed a receiver to take possession of the property, and such order was reversed here. We quote therefrom:

''The question to be determined is, Was the plaintiff entitled to the appointment of a receiver, and to the rents and profits of the land during the redemption period? The appointment of a receiver is one of the extraordinary remedies which may, in a proper case, be resorted to by a creditor as an

aid to the collection of a debt. It operates as a summary method of seizing and holding property, and is usually attended with great expense and loss to the parties. A party seeking the remedy should make such a showing as to fairly entitle him thereto. We have set out certain parts of the mortgage, that it may be seen that it is not contemplated thereby that a receiver should be appointed after a foreclosure. The mortgage expressly provides that the plaintiff may take possession by action of forcible detainer, if necessary, but that possession 'shall in no manner prevent or retard the second party (the plaintiff) in the collection of said sums by foreclosure or otherwise.' There is no express provision for the appointment of a receiver at any time. The fact that the 'tenements, hereditaments, and appurtenances, and the rents, issues and profits,' were conveyed to the mortgagee must be construed with the defeasance of the instrument; and, where so construed, the instrument plainly provides that the rents and profits are only pledged in case possession is taken by the mortgagee. But the mortgagee did not take possession. His suit was an ordinary proceeding in equity for the foreclosure of the mortgage, and he did not ask for a receiver to take possession until after the remedy by foreclosure and sale should be exhausted. The mortgagors did not bargain away their right of redemption, unless the plaintiff should take possession before foreclosure, and hold it until the defendant was paid. It is a right which the law gives to an embarrassed debtor to save his property if he can. It is in the nature of a stay law, and courts ought to require a very clear showing that it has been bargained away, before depriving the debtor of the right to retain possession of the property until the redemption has expired. The defendant Woolley is the lessee of the mortgagors, and, as against the plaintiff, he has the same rights which the mortgagors could have asserted. Moreover, the plaintiff did not show that the mortgagors were insolvent. That issue was directly tendered, and the burden was on him to show good grounds for the appointment of a receiver."

From *Callanan & Ingham v. Shaw*, 19 Iowa 183, we quote the following:

"Heavy doubts (to say no more) are entertained by at least one member of the court, whether, in any case, a receiver should

be appointed to take possession and charge of a mortgagor's homestead, pending proceedings to foreclose a mortgage. The argument, in brief, is that, until the amount of the incumbrance is settled and adjudicated by the court, the validity thereof recognized, and a sale made, the family cannot be disturbed in their possession; that, though it may be mortgaged and the premises alone may be finally liable to meet the debt, still the rents, the use, the enjoyment, cannot be thus appropriated against the will of the mortgagors. The question is an interesting and important one, not free from difficulty; and, as this case must be decided by three members of the court, we defer its decision until we can have the benefit of a full conference, and in a case when its decision becomes necessary. If a receiver would be appointed in a case where the indebtedness was indisputably equal, if not greater than the mortgaged premises, we unite in the opinion that such an application may be properly refused, as to the homestead, where this matter is left in the doubt and uncertainty found in this record. The parties differ some $3,000 as to the amount of the indebtedness, and $4,000 in the value of the security. If defendants are right in either estimate, then it is perfectly clear that they should not, upon any theory, be disturbed in their possession. If plaintiffs are right, the necessity is by no means clearly manifest. The principle derived from the cases, which, by analogy, is applicable here, is this: Formerly the mortgagee held the legal title, and was entitled to possession. Under our law, this rule is changed, and the mortgagor has or is entitled to both; and this is emphatically so as to the homestead. Now the rule has been, from an early date, at common law, as between the mortgagor and mortgagee, that, if the mortgagee says by his answer (in a bill to redeem) that anything is due him, the court will not disturb the possession; will not, upon the application for the appointment of a receiver, settle and ascertain the accounts between them. (*Quarrell v. Beckford,* 13 Ves. 377; *Codrington v. Parker,* 16 Ves. 469; *Berney v. Sewell,* 1 J. & W. 647; *Rowe v. Wood,* 2 J. & W. 553.) And, says Mr. Edwards (Receivers, 44), where anything is due to a mortgagor in possession he will not be deprived of such possession by an appointment of a receiver. In this state, the mortgagor being in possession, this possession,

under the legal estate, should not be disturbed by the appointment of a receiver, unless, indeed, in cases of fraud clearly proved, or of danger to a mortgagee (having a strong claim), if the intermediate estate or possession should not be brought under the care of the court. In any case, the receiver is appointed against the holder of the legal title with reluctance. *Lloyd v. Parringham,* 19 Ves. 59; *Smith v. Smith,* 2 Y. & C. 351; *Knight v. Duplessis,* 2 Ves. 360; *Toldervy v. Colt,* 1 Y. & C. 621. We do not say, by any means, that the court will not appoint as against a mortgagor under an ordinary mortgage, where the whole mortgaged premises are not of sufficient value to pay the debt. We only say that it will not be done unless it clearly appears that the court should take charge of the estate, to protect the rights of a party having a clear, strong claim against it. Such a case is not now before us.''

III. It is an interesting query whether Code Section 2976 confers power at all upon a mortgagor to pledge as security for a debt the *right of occupancy of a homestead during the year of redemption.* This section of the Code does permit a *sale.* This means a statutory judicial sale, which is subject to the right of redemption and to the right of occupancy during the year of redemption. We have no occasion to pass upon this question pro or con in this case, and are not to be deemed to be doing so. For the reasons indicated in the preceding divisions hereof, the decree of the district court will be—*Affirmed.*

WEAVER, C. J., LADD, PRESTON, STEVENS, and ARTHUR, JJ., concur.


SALINGER, J. (dissenting). I. The mortgagor and the mortgagee contracted that:

''A receiver shall be appointed to take possession and charge of the mortgaged premises at once, and to hold possession of same until the debt is fully paid, and until the time of redemption expires, and all rents and profits derived from the mortgaged premises shall be applied on the debt secured by the mortgage.''

And in the same contract, the mortgagors ''relinquish all

our contingent rights in and to said premises, including the right of dower and homestead, to the said grantee.''

It is idle to dwell on the fact that these mortgaged premises were a homestead. They were that when the contract was made, and, as seen, homestead rights were duly relinquished in advance. The case stands as if there were no homestead. Assume, for the sake of argument, that such a contract is harsh, and, if you please, unreasonable. The fact remains that one may refuse to lend unless such an agreement be first entered into. It is a plain contract, leaving no room for interpretation. The majority does not hold that this agreement can reasonably be construed to mean less than the appellant claims for it. What it asserts is that, though the agreement plainly gives all that appellant claims, and though he loaned upon the faith of having it, he may not enforce it as it is written, but can enforce it only upon a showing of inadequate security and insolvency of the mortgagor. Is that a fair treatment of the contract? Without this contract, Section 3822, Code of 1897, authorizes a receivership if, among other things, it is made to appear that the property or its rents or profits are in danger of being lost or materially injured or impaired, and if the interest of one or both of the parties will be promoted by the receivership, and the substantial rights of neither unduly infringed. So much would be in the power of the court without statute, under well-established rules on the equity side. There was no good reason for making a contract such as was here made, and which leaves out danger to the property or to the rents and profits, and the insolvency of the mortgagor, unless it was mutually intended that the contract should give something which would not be obtained without it. The one thing which, without contract, would be lacking is the right to have a receiver without proof of insolvency, etc. That right is given by the contract provision for a receivership without mention of insolvency, inadequacy, etc. As said, it was utterly idle to make this contract unless it gave this one right. Ordinarily, courts do not give contracts an effect which makes them of no effect.

There can be a valid contract as to obtaining a receivership. It is said in *Smith v. Sioux City N. & S. Co.*, 109 Iowa 51, at 56, that *Hubbell v. Avenue Inv. Co.*, 97 Iowa 135, recognizes the

right to contract as to the appointment of a receiver. To sustain the majority, it must be found that, while there may be contract authority for obtaining a receiver, it is against law to contract that there shall be a receiver on foreclosure; that he shall take possession and charge, and hold the mortgaged premises until the mortgage debt is fully paid, and until the time of redemption expires; and that all rents and profits shall be applied on the mortgage debt. The majority confesses its inability to support its position by authority. Unless its opinion becomes the law in this jurisdiction, it is probable that its position will never be supported by authority, for the simple reason that it is difficult to find decisions in courts of last resort declaring that, where one is at liberty to keep his money unless he gets such a contract as this, that, when he does obtain it and lends his money, he may not enforce such contract. No reason occurs to me why that should ever be held. Code Section 2922 sustains me by implication; for it provides that the mortgagor of real estate retains the right of possession thereto, "in the absence of stipulation to the contrary." So does *Myton v. Davenport,* 51 Iowa 583, sustain me; for it holds that, if rents and profits *are* applied to the payment of the mortgage debt and necessary expenses, then there is no ground for the appointment of a receiver. *Des Moines Gas Co. v. West,* 44 Iowa 23, does not militate against my position. It merely holds that, if there is a probable right to recover, a receiver will be appointed, even if the mortgage does no more than to pledge the income, rents, and profits to the payment of the debt. The contract at bar does all that, and in addition provides that the receiver may hold possession until the debt is fully paid, and until the time of redemption expires. The case of *American Inv. Co. v. Farrar,* 87 Iowa 437, comes very close to holding that, where the mortgage in terms gives the right of possession before sale, or before the termination of the statutory right to redeem, or even if it does no more than pledge the rents and profits, a receiver should be appointed.

True, many cases here and elsewhere may be found, holding that the receivership cannot be had without a showing of inadequate security and insolvency of the mortgagor. But each and all have no contractual stipulation on the subject. The dictum

of *Callanan v. Shaw,* 19 Iowa 183, expressing doubt as to whether contract to take charge of a homestead pending a foreclosure finally can be enforced, rests himself upon the proposition that "the rents, the use, the enjoyment [of a homestead] cannot thus be appropriated against the will of the mortgagor." Manifestly, this dictum, even, gives the majority no support, because the appropriation here is not "against the will of the mortgagor," but upon his written consent.

Though that is not needed, the fact is that the enforcement of this contract can inflict no substantial injury upon the mortgagor. Though possession be taken, and, if you please, rents and profits thereby created, this can work none but a sentimental injury to the mortgagor—cannot cause him material or tangible injury. If the event prove that the sum realized from taking possession during the year of redemption, plus what is realized from the sale of the premises, is as much or more than the mortgage debt and the expense of foreclosing, a restoration is automatically worked. If it becomes necessary to supplement the proceeds of sale with the rents and profits, then, of course, the debtor has suffered no injury: he has simply been compelled to perform his contract and to pay his debt. In no contingency can the seizure in the year of redemption work a payment of more than the debt. On the other hand, when foreclosure is begun, say, for default in interest, there is always a possibility that, by the time the year of redemption has expired, property thought adequate may prove inadequate. If possession be not yielded, the creditor may lose. But though it be yielded, the debtor cannot lose.

When the mortgagee makes default, and in equity owes the payment of the debt, there would seem to be no good reason why he should be permitted to compel the creditor to wait for the receipt of the first dollar until a year after sale. The creditor may well insist, and therefore contract, that, if the mortgagor becomes in default, the creditor shall have the use of so much money as may be obtainable from immediate possession, acting as a trustee who is bound to make restoration if finally it appear that he is not entitled to retain any or all of the rents and profits, or the proceeds of having obtained possession.

In final effect, the majority holds this: The statutes on homesteads forbid a contract that, if default be made on a mortgage duly pledging the homestead, the court *shall* appoint a receiver to take possession during the year of redemption, who shall apply the rents and profits to the mortgage debt, and that the court *shall* so appoint without inquiry as to whether the mortgagor is or is not insolvent, nor into whether the security is adequate. In my judgment, no case cited, or that can be cited, so rules, and no statute has such prohibition. No doubt such contract is or may prove harsh. But that affords no warrant for disregarding it.

II. The appellees pleaded:

"That the mortgage security for the payment of the debt secured by cross-petitioner's mortgage is ample and sufficient to pay said debt, principal, interest, and costs, and that, by reason of said fact, said cross-petitioner has no right to the appointment of a receiver in this cause."

This was an appreciation of where the burden of proof lies. So, appellee conceded that, if you grant that, despite contract, the debtor may not be interfered with as to possession or rents and profits, so long as he is solvent, or the mortgaged property is sufficient security, that that is matter which avoids the contract. If all else be granted, then there should be a reversal here because no evidence was adduced to support this plea. If the majority errs in nothing else, it does so in overlooking that, on its own theory, appellant was entitled to a receivership unless appellee proved said matter of avoidance which he pleaded as such. In any view, the appellant can enforce this contract unless it appears that the security is inadequate, etc. The majority defeats appellant because he failed to prove what it was the duty of his adversary to prove.

Passing that, the record quite suggests that the security is doubtful. The note secured by mortgage is for $200. It is dated March 5, 1917. It bears 7 per cent interest, payable annually, defaulting interest or defaulting principal to draw 8 per cent. It is shown that nothing has been paid except two $7.00 installments of interest, the last one paid on June 8, 1918. The property is Lot 5 in Block 3 in Lowe's Addition to the city of Sigourney, Iowa. There is no evidence of its value. The lien

of appellant has fifth place. The claims that have precedence over it are, respectively, one for $236.67, with interest at 8 per cent from October 7, 1912, with costs taxed at $28.30; a claim of $131.06, with interest from March 29, 1913, at 6 per cent interest on $96.79 thereof, and interest at 8 per cent on $34.27 thereof, and for costs taxed at $1.25; one for $195.35, with 8 per cent interest from May 10, 1915, and costs taxed at $7.50; and another for $1,366.17, with interest thereon at 8 per cent from the date of decree, with costs and attorney fees.

I would reverse.