**SUN INS. OFFICE, LIMITED, OF LONDON v. LESHEFSKY et al.**

No. 282.

District Court, D. Massachusetts.

March 7, 1940.

Walter Malcolm and Bingham, Dana & Gould, all of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and Jackson J. Holtz, Asst. U. S. Atty., both of Boston, Mass., for defendants Breslin & Anderson.

Samuel Harmon, of Boston, Mass., for defendants Joseph and Leon Leshefsky.

BREWSTER, District Judge.

This is a civil action to determine title to four certificates of stock. They are now in the possession of the defendants Breslin and Anderson. The defendants Joseph and Leon Leshefsky (the word "defendants" hereinafter used will apply to these defendants only) claim a lien as pledgees. Plaintiff seeks a summary judgment under Rule 56 of Rules of Civil Procedure, 26 U.S.C.A. following section 723c, on the pleadings and affidavits filed by it. Defendants have filed no counter-affidavits.

The following facts are established:

On January 11, 1937, the stock brokerage firm of Carl M. Loeb & Co., with offices in New York, N. Y., and Cleveland, Ohio, was the owner of four certificates of stock, one representing twenty-four shares in the Union Carbide & Carbon Corp. (a New York corporation), one representing six shares of stock in the Addressograph International Corporation (a Delaware corporation), one representing fifty shares of stock in the Baldwin Locomotive Works (a Pennsylvania corporation), and one representing twenty shares of stock in the International Nickel Company of Canada, Ltd., organized under the laws of the Dominion of Canada. Each of these certificates was endorsed on the back thereof, at the foot of the customary transfer legend, by the person in whose name the certificate stood. These certificates constituted a part of a package prepared in the Cleveland office and sent by registered mail to the New York office of Carl M. Loeb & Co. Before these certificates were mailed from the Cleveland office, the name "Carl M. Loeb & Co." was inserted in the form of transfer on the back of each certificate as attorney to effect a transfer of the shares on the books of the corporations issuing the same. This name "Carl M. Loeb & Co." has obviously been erased on each certificate. The package was not received at the New York office but was stolen from the mail-carrier in New York as it was about to be delivered. The contents of the package were insured by the plaintiff who became assignee of all rights of Carl M. Loeb & Co. to recover the certificates. The certificates are in the possession of the defendants Breslin and Anderson, as they are Post Office Inspectors who obtained them from the other defendants for use as evidence in the criminal prosecution of one Joseph M. Lydon.

No genuine issue of fact is presented respecting the foregoing. The defendants attempt to raise an issue respecting the insertion of the name of Carl M. Loeb & Co. as attorney to transfer the stock. This

attempt must fail in view of the evidence before me. Photostatic copies, shown to be correct by the affidavits of a Post Office Inspector, clearly reveal that on two of the certificates the name was stamped on the back and only partially erased. On the other two, it is evident that there has been an erasure by means of chemicals. These revelations, taken in connection with other undisputed facts, leave no room to question the truth of the statement of plaintiff's affiants that Carl M. Loeb & Co. was duly constituted and appointed the attorney to transfer the stock by the insertion of the firm name in the form of transfer on the back of each certificate.

The defendants admit, in their answer, that they received the four certificates from said Lydon and allege that they were received as collateral security for a loan, and that they took the certificates for value without knowledge of any defect and therefore, were bona fide pledgees. The answer is not verified, and no affidavits supporting the allegations are in evidence.

■ The plaintiff argues that the answer is not sufficient to raise a genuine issue of fact because the defendants have only stated conclusions of law without offering any supporting affidavits. The defendants do not disclose the amount of the loan, the terms of it, or any fact in connection with it. It is not necessary, however, to dispose of the case on this narrow ground. The issue whether the defendants are innocent holders for value is not material if, for the purposes of this case, it is assumed that they came by the certificates honestly and without any knowledge of the theft. In that event, the question becomes one of law only, and the rights of the parties may be properly adjudged in a proceeding for summary judgment under the rules. Culhane v. Jackson Hardware Co., D.C., 25 F.Supp. 324; Hufner v. Erie R. Co., D.C., 26 F.Supp. 855; Mabardy v. Railway Express Co., D.C., 26 F.Supp. 25; United States v. McCulloch, D.C., 26 F. Supp. 7; Walsh v. Connecticut Mutual L. I. Co., D.C., 26 F.Supp. 566.

■ It appears to be conceded that at common law an innocent pledgee or purchaser of a certificate of stock cannot acquire from a thief, who was not entrusted by the owner with the possession of the certificate, a title good against the true owner although the certificate was endorsed in blank. Pratt v. Higginson, 230 Mass. 256, 119 N.E. 661, 1 A.L.R. 714;

Edgerly v. First National Bank of Boston, 292 Mass. 181, 197 N.E. 518; Scollans v. Rollins, 173 Mass. 275, 53 N.E. 863, 73 Am.St.Rep. 284. See National Safe Deposit Co. v. Hibbs, 229 U.S. 391, 33 S. Ct. 818, 57 L.Ed. 1241.

■ The plaintiff contends that the common law rule obtains as to the certificate of shares in the Addressograph International Corporation and in the International Nickel Company, inasmuch as in Delaware and in Canada, where these corporations were incorporated, the common law has not been modified by the Uniform Stock Transfer Act. The transfer, in the case at bar, was in Massachusetts where the Uniform Stock Transfer Act is in force. But it is settled that the Act has no application to transfers of stock in foreign corporations, organized in states where the Act was not operative. Mass.G.L. (Ter.Ed.) c. 155, sec. 26; Lavien v. Norman, 1 Cir., 55 F.2d 91, 97; Barstow v. City Trust Co., 216 Mass. 330, 103 N.E. 911; Boston Safe Deposit & Trust Co. v. Adams, 224 Mass. 442, 113 N.E. 277, L.R.A. 1916F, 488; Casto v. Wrenn, 255 Mass. 72, 150 N.E. 898.

I am unable to accept as valid the argument of the defendants that the laws of New York are to be applied to the pledge because the theft was committed in that state. The question is not vital, however, since the New York courts follow Massachusetts in holding that the Uniform Stock Transfer Act has no application to shares of stock in foreign corporations unless the Act was operative in the state where the corporation was organized. United States Fidelity & Guaranty Co. v. Newburger, 263 N.Y. 16, 23, 188 N.E. 141.

■ The rights of the parties with respect to the shares in the Addressograph International Corporation and the International Nickel Company of Canada, Ltd., are to be determined, therefore, according to the principles of common law and without reference to the provisions of the Uniform Stock Transfer Act. It follows that the defendants acquired no valid lien in these certificates, and this would be true if the certificates were treated as certificates endorsed in blank.

The Union Carbide & Carbon Corp. is a New York corporation, and the Baldwin Locomotive Works is a Pennsylvania corporation. In New York and Pennsylvania, the Uniform Stock Transfer Act is opera-

tive. The question arises whether, under the Uniform Stock Transfer Act, the defendants have a lien valid as against the true owners of the shares in the Union Carbide & Carbon Corp. and the Baldwin Locomotive Works, if it be assumed that they are bona fide pledgees.

The pertinent provisions of the statute are found in Massachusetts General Laws (Ter.Ed.) c. 155, secs. 27, 31 and 41, which are as follows:

"Section 27. Title to a certificate and to the shares represented thereby shall be transferred only—

"(a) By delivery of the certificate endorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby; or

"(b) By delivery of the certificate and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person. * * *"

"Section 31. The delivery of a certificate to transfer title in accordance with section twenty-seven shall be effectual, except as provided in section thirty-three, though made by one having no right of possession and having no authority from the owner of the certificate or from the person purporting to transfer the title."

"Section 41. The alteration of a certificate, whether fraudulent or not and by whomsoever made, shall not deprive the owner of his title to the certificate and the shares originally represented thereby, and the transfer of such a certificate shall convey to the transferee a good title to such certificate and to the shares originally represented thereby."

It has been held that sec. 31 has no application to a transaction where the certificate was endorsed to a special person and such endorsement was thereafter fraudulently erased. Place v. Chaffee, 251 Mass. 508, 146 N.E. 722.

■ It must be equally true with respect to any fraudulent alteration of an endorsement which would render ineffectual a transfer by delivery in accordance with sec. 27. The rights of Carl M. Loeb & Co. in these certificates were not affected by the attempted erasures of its name from the back of the certificates as attorney to transfer. Mass.G.L.(Ter.Ed.) c. 155, sec. 41; Place v. Chaffee, supra. National Surety Co. v. Indemnity Ins. Co., 237 App. Div. 485, 261 N.Y.S. 605.

It is no answer that the defendants were not aware of the fraudulent alteration. In Place v. Chaffee, supra, the name of the assignee of the certificate had been effectually erased and the bona fide purchaser supposed he was acquiring the certificate endorsed in blank by the person appearing in the certificate to be the owner. The Court held, nevertheless, that, because of the fraudulent alteration, the delivery of the certificate gave no title to the purchaser, notwithstanding the provisions of the Uniform Stock Transfer Act.

■ In considering defendants' rights, therefore, it is necessary to proceed on the assumption that they took certificates which carried on the reverse side thereof a power of attorney, running to Carl M. Loeb & Co., to transfer the stock on the books of the corporation. In such circumstances, what are defendants' rights as pledgees? In an unreported case in the New York Supreme Court on facts identical, except that the name of the attorney had not been erased, the Justice, in a brief but convincing memorandum, allowed a motion for a summary judgment. He said: "The presence on the certificates of indorsements containing an irrevocable power of attorney in the name of a specified firm makes it impossible to treat the certificates as 'endorsed in blank' within the meaning of section 162 of the Personal Property Law. The transfer of title by delivery of a certificate indorsed in blank is based upon the theory that the transferee is obtaining all the indicia of ownership and the apparent unconditional control over and full disposition of the certificate. Such control is not present where a specified person has been given power of attorney to transfer. At least such power of attorney places upon the prospective purchaser a duty of inquiry. Motion is granted."

The conclusion is compelled that the power of attorney to a specified person, endorsed on the back of the certificate, restricts the negotiability of the certificate even under the Uniform Stock Transfer Act. Such certificate is not endorsed in blank and, therefore, its delivery without more does not pass title even to an innocent purchaser. Compare Knox v. Eden Musee

American Co., 148 N.Y. 441, 42 N.E. 988, 31 L.R.A. 779, 51 Am.St.Rep. 700.

▐ Before any pledgee can be recognized as a stockholder in the several corporations, it will be necessary to transfer the certificates on the books of the corporation. The irrevocable power to transfer on the books of the corporations was possessed by Carl M. Loeb & Co. No purchaser, or pledgee, could obtain such a transfer without the approval or consent of the attorney. See First National Bank v. Lanier, 11 Wall. 369, 378, 20 L.Ed. 172.

▐ It is significant that, according to usage among brokerage houses, the name of the attorney empowered to transfer is inserted to protect the owner from loss or theft of stock certificates and, in order to restore full negotiability by delivery, a blank power of substitution is required.

Upon the facts, concerning which no genuine issue of fact is raised, and assuming as I have, for the purpose of this case, that the defendants are innocent parties, I conclude that they have no rights in the certificates superior to those of the plaintiff. The plaintiff is entitled to receive the certificates now in the possession of the defendants Breslin and Anderson and, consequently, it is entitled, as a matter of law, to a summary judgment in its favor.

Plaintiff's motion for such a judgment is allowed.