**CENTRAL SAVINGS & LOAN ASSOCIA-
TION, Plaintiff-Appellee,**

v.

**Paul Gene GAUMER, Janice Kay Gaumer,
et al., Defendants-Appellees,**

v.

**Gaylord W. ENGLE, Elva M. Engle,
Defendants-Appellants.**

**No. 53308.**

Supreme Court of Iowa.

May 6, 1969.

Rehearing Denied July 24, 1969.

Barry N. Minear, Des Moines, for defendants-appellants.

Morr & Shelton, Chariton, for plaintiff-appellee.

Reynoldson & Reynoldson, Osceola, for defendants-appellees.

MOORE, Justice.

On January 31, 1967 plaintiff, Central Savings & Loan Association, filed its petition seeking to foreclose on mortgaged real estate as described therein and then occupied by defendants, Gaylord W. Engle and Elva M. Engle. Plaintiff alleged the mortgage was executed by defendants, Paul Gene Gaumer and Janice Kay Gaumer, and that Engles, when they bought the property from Gaumers, assumed and agreed to meet the obligations of the mortgage. Several secondary lien holders were also made defendants.

Plaintiff's petition alleged a $375.60 delinquency in payments of principal and interest on the promissory note and mortgage, unpaid taxes and asked personal judgment against the Engles and the Gaumers. Plaintiff also alleged waste was being committed on the premises and asked that a receiver be appointed and given possession thereof.

Engles, Gaumers and at least one lien holder appeared by their respective attorneys. Engles filed a motion for stay of proceedings pending adjudication on their bankruptcy proceedings. A stay was granted until April 15, 1967 and on July 29 plaintiff filed a motion for summary judgment against Engles. As required by rule

238, Rules of Civil Procedure, plaintiff's motion was supported by an affidavit verifying the claim, the amount due and the affiant's statement he believed no defense existed against it.

Within the 10 day period stated in the rule, Engles filed their resistance to plaintiff's motion for summary judgment. By affidavit Engles asserted plaintiff was not entitled to any personal judgment against them as prayed by plaintiff. It included statements of fact that plaintiff's claim had been listed in their bankruptcy proceedings and they had been granted a discharge. They also set out they were occupying the premises as their home.

Simultaneously with filing their resistance Engles filed an answer putting at issue several material allegations of plaintiff's petition. They asserted the defense of a discharge in bankruptcy and denied plaintiff's right to the appointment of a receiver. They also asserted homestead and possession rights. The district court clerk noted copies of the resistance and answer were mailed or delivered to plaintiff's attorneys on August 8, the filing date.

On September 1, 1967, apparently a court motion day, this calendar sheet entry was made: "Plaintiff's motion for summary judgment overruled. (s) Hobert Newton, Judge."

September 8, 1967 on another calendar sheet, this entry was made: "Judgment per entry. (s) Robert O. Frederick, Judge."

The judgment and decree contained a finding: "That the Plaintiff has heretofore filed herein its motion for summary judgment; that Plaintiff's motion for summary judgment is in proper form, and that Defendants appearing of record (Engles) have not in any manner resisted Plaintiff's motion as required by R.C.P. 238."

The decree did not include a personal judgment against Engles but did provide for the appointment of a receiver in event the property sold for less than the judgment, attorney fees and costs. In such an event it further provided the receiver have immediate possession of the premises involved.

On October 20, 1967 Engles filed a motion to set aside the decree: "for the reason that the motion for summary judgment filed by the Plaintiff had not been ruled upon by this Court and that the Court was without jurisdiction to enter any decree in this case."

At the sheriff's sale on October 27, 1967 plaintiff bought the property in for $13,700, leaving a deficiency of $839.74. Later Engles were evicted by the receiver.

On October 23, 1967 this entry was made on the calendar page previously used by Judge Frederick: "Defendants' motion to set aside decree continued for the attention of Judge Frederick unless Plaintiffs confess said motion. (s) Hobert C. Newton, Judge."

Plaintiff did not confess the motion but filed resistance thereto as did the Gaumers.

After hearing on the motion to set aside the decree and receiver's application this entry was made on the calendar sheet originally used by Judge Newton: "February 7, 1968, Motion of defendant Engle to set aside Decree filed October 20, 1968, is specifically overruled.

"February 7, 1968, Hearing on receiver's application and order as per signed entry. (s) M. C. Herrick, Judge." The entry included a judgment in favor of the receiver against the Engles of $459 as rent from October 27, 1967 to February 6, 1968. Engles have appealed from the orders of February 7.

■ I. The issue here presented, as stated by appellants Engles, is whether a judge of the district court could enter a decree on a motion for summary judgment after timely resistance had been made and another judge of that district had overruled the motion. In short Engles contend the second judge had no jurisdiction to enter a decree in this matter until the prior

ruling had been changed pursuant to a hearing. They maintain under the pleadings a genuine issue as to material facts appears and that Judge Frederick's decree was erroneously entered particularly because it was based on a finding no resistance had been filed to the motion for summary judgment.

Plaintiff-appellee contends the second judge had jurisdiction to act in this matter, that only a procedural irregularity appears and asserts the pleadings, admissions, and affidavits show there was no genuine issue as to any material facts. We are unable to agree. When Judge Frederick ruled on the motion and entered the foreclosure decree, in the absence of Engles and their attorney, no motion for summary judgment was pending. His finding that no resistance had been filed was contrary to the record. The resistance and answer raised real issues which Engles should have been given an opportunity to present on trial of the case.

The unusual facts and the questions presented here seem to be without precedent in this court or other courts except Dunkelbarger v. Myers, 211 Iowa 512, 233 N.W. 744, which considers jurisdiction of different judges making ruling in the same case. We shall discuss it infra.

The method, or lack thereof, of the Warren district court clerk of keeping records appears to be the real cause of the controversy now presented to us. Two calendar sheets were used. They have been referred to as number one and two. Number one was used by Judges Newton and Herrick. Number two was used by Judge Frederick. The attorneys and Judge Frederick were not advised of Judge Newton's order until it was apparently discovered at the hearing to set aside the decree. No attack has been made on it. It remains as a valid order.

Engles' resistance to the motion had been on file a month before Judge Frederick's ruling but it did not come to his attention. Ordinarily it would be in the court files with the pleadings and plaintiff's motion. It is difficult to believe plaintiff's attorneys were advised of the resistance or that it was properly placed in the court file and they took a decree based on a finding of no filing of a resistance by Engles.

Although not exactly in point factually we believe our holding in Dunkelbarger v. Myers, supra, is controlling here. There Judge Thompson of the Polk District Court heard and took under advisement the issues in that case. Later an associate, Judge Franklin, under a court rule, not knowing it had been submitted to Judge Thompson, dismissed the case for lack of attention. Subsequently Judge Thompson discovered the dismissal order, set it aside and entered judgment for plaintiff. On appeal we affirmed on the ground Judge Franklin did not have jurisdiction to make the dismissal order.

At pages 515, 516, 211 Iowa, page 745, 233 N.W., we say: "If the action of the lower court is to be sustained, it must be on the ground that Judge Franklin had no jurisdiction to enter the order of dismissal. True, the record shows that the entry of such order by Judge Franklin was through inadvertence or mistake; as he states in his testimony that, had he known that the case was held under advisement by Judge Thompson, he would not have entered such order. The question here involved may arise in any of our districts, especially in the larger cities, where two or more judges are holding court during the same term at the same time.

"Generally speaking, where there are several judges holding court at the same place at the same time, the action of any one of them in matters before him is the action of the court. But we have here a condition where a case was duly assigned, tried, and submitted to one judge, and he took such case under advisement. In so doing, we think he excluded all other judges in his district from making any orders which in any way would affect the substantial rights of the parties, or which

would in any way interfere with Judge Thompson's final disposition of the case. In other words, we think that, when this case was tried and submitted to Judge Thompson, and he took it under advisement, he took full jurisdiction of the cause, and thus deprived other associate judges from jurisdiction to dismiss the case. We think this is the practical rule; for, were it not so, under the circumstances of the instant case, utter confusion might be brought about in any case if different judges made orders or rulings therein."

This reasoning is applicable here. Judge Newton in the regular course of his duties had overruled plaintiff's motion for summary judgment. It was no longer pending before the court. Judge Frederick was without jurisdiction to make a contrary ex parte order thereon.

■ II. Plaintiff and Gaumers argue no prejudice resulted to Engles and the decree, sale and the subsequent judgment for rent should be allowed to stand. We do not agree.

The record and order authorizing foreclosure sale of Engles' home resulted in a serious cloud on the title which would readily appear to a prospective bidder. He would certainly know he was buying a lawsuit.

It seems reasonable to conclude plaintiff's bid was made with this knowledge. A clear title would be inducive to a much higher bid and perhaps the avoidance of a receiver taking possession and asserting a rent claim against Engles.

We hold Judge Herrick should have sustained Engles' motion to set aside the ruling and foreclosure decree entered by Judge Frederick. Plaintiff would have been wise to adopt Judge Newton's suggestion in his order of October 23 that the motion to set aside the decree be confessed.

This case is reversed and remanded to the trial court for trial on the merits. Costs of this appeal are taxed against plaintiff-appellee.

Reversed and remanded.

All Justices concur except LARSON, J., who dissents, and STUART, J., who takes no part.

LARSON, Justice (dissenting).

I respectfully dissent, for the determination by the majority here amounts to little more than an exercise in futility. No gain, only a loss to the litigants, is the ultimate result of this reversal.

The issue presented, as stated by appellants, is whether a judge of the district court could enter a decree on a motion for summary judgment after timely resistance had been made and another judge of that district had overruled the motion. In short, appellants contend the second judge had no jurisdiction to enter a decree in this matter until the prior ruling had been changed pursuant to hearing, and rely principally upon our pronouncement in Dunkelbarger v. Myers, 211 Iowa 512, 233 N.W. 744. They also maintain under the pleadings a genuine issue as to material facts appears and that the court erred in resolving the issues presented as a matter of law. I cannot agree.

Appellee contends that the second judge had jurisdiction to act in this matter, that only a procedural irregularity appears, and that Dunkelbarger v. Myers is not applicable here. It further contends a summary judgment under this record was proper under our rules of civil procedure because the pleadings, admissions, and affidavits show there was no genuine issue as to any material fact, citing Eaton v. Downey, 254 Iowa 573, 118 N.W.2d 583; Schroedl v. McTague, 259 Iowa 627, 145 N.W.2d 48, and Bjornsen Construction Co. v. J. A. Whitmer & Sons, 254 Iowa 888, 119 N.W.2d 801.

Errors which do not affect jurisdiction in its true sense, and errors as to the reason for a proper holding, are often referred to as harmless errors, and in such instances it is said these errors should be

considered in light of the ultimate goals of the judicial process and the expeditious adjudication of the controversy on the merits. See Utah L.Rev., Vol. No. 1, March 1967, pp. 15–19. It is well settled that this court must overlook the procedural mistakes and get to the merits of the controversy when the legal question bypassed is not significant and will not substantially affect the outcome of the litigation. Lautenbach v. Meredith, 240 Iowa 166, 35 N.W.2d 870; Merkel v. Merkel, 247 Iowa 495, 73 N.W.2d 75; section 619.16 Code of 1966. See also Vestal, Sua Sponte Consideration in Appellate Review, 27 Fordham L.Rev. 477, 506. Applied to the case at bar, unless the outcome of this litigation would reasonably be affected by the ruling and decree issued by the second judge, I would not reverse just to obtain a reconsideration of the ruling of the first judge and an appeal to us from that ruling. In so stating, I am aware of the rule that a judge should hesitate to undo his own work, and still more, should hesitate to undo the work of another judge.

I believe such is the situation in the case at bar, and would direct our consideration to the question of whether the action taken by the second judge was correct and whether failure to set aside that judgment and remand the matter for further litigation before the first judge resulted in any substantial deprivation of appellants' rights.

A full consideration of the question as to whether appellants were deprived of any substantial rights by the granting of plaintiff's motion for summary judgment is, therefore, of importance here. In both the answer and sworn affidavit appellants (1) objected to the appointment of a receiver in the foreclosure proceedings, (2) claimed the real estate was their homestead, and (3) set up a defense to any personal judgment due to their discharge in bankruptcy.

In their answer appellants admitted that defendants Gaumers had executed and delivered their promissory note to plaintiff Central Savings & Loan Association in the sum of $14,500, that they had secured the note by a mortgage on the real estate involved in this suit, as shown by Exhibits "A" and "B", and that the mortgage was duly recorded on February 1, 1962. They also admitted these obligations provided for attorneys fees in event of suit thereon, and that an affidavit for said fees was attached to the petition.

For lack of information, appellants denied the allegation that payments on this obligation as of December 1, 1966, were delinquent and in arrears in the amount of $375.60, that the real estate taxes for 1965, due and payable in 1966, were unpaid, that on December 1, 1966, there was due and unpaid the sum of $13,588.56 with interest at six per cent per annum from that date, and that several defendant individuals and firms have no interest in the real estate except liens claimed against appellants due to judgments for various reasons. They denied that the real estate had not been properly cared for nor kept in repair, that waste is being committed thereon, that the obligors under the note and mortgage assumed by the Engles are insolvent, that the security was insufficient or that appellee was entitled to the appointment of a receiver to take charge of the real estate and collect the rentals and apply them to the obligation.

Appellants admitted they accepted a conveyance of this property from the defendants Gaumers, and that by the deed they assumed and agreed to pay the obligation, but denied they are personally liable thereon to plaintiff who had notice of the discharge of that debt via bankruptcy.

The decree complained of, which was entered on the 8th day of September, 1967, found plaintiff's motion for summary judgment was in proper form, that defendants have not resisted the motion "as required by R.C.P. 238," and that plaintiff was entitled to judgment in rem against the real estate in the amount of $13,588.56 with interest at six per cent per annum from December 1, 1966, and costs including statutory attorneys' fees, and judgment in person-

am against the Gaumers. It established the mortgage declared upon as a first and paramount lien upon the real estate and ordered its sale upon special execution as well as a general execution against the Gaumers for any and all deficiency on the judgment. It further decreed, if any part of the mortgaged premises be sold under special execution and be not redeemed within one year from the date of sale, a writ of possession issue directing that the purchaser be put in possession thereof.

It was further ordered that if the real estate is sold for less than the amount of the judgment rendered herein, then one Ashby "be and he is hereby appointed receiver of the real estate" and if a deficiency exists after the special execution sale, he is to "look after, manage and conserve the rents, profits and income" and apply them first to the costs and expenses of the receivership and then to the satisfaction of the judgment and costs remaining unpaid. It further provided that the receiver shall qualify "if, and ony if, a deficiency exists, as aforesaid, * * *." The court retained jurisdiction of the parties and the subject matter.

The record discloses special execution was issued on September 18, 1967, and notice of sale was served upon the appellants on September 28, 1967.

On October 20, 1967, the Engles filed their motion to set aside the decree, giving as their reasons (1) that the motion for summary judgment "had not been ruled upon" and the court was without jurisdiction to enter the decree, (2) that they have a defense to the action and should be given the opportunity to present this defense to the court, and that this defense involves the possession of the premises during the period of redemption, the property being their homestead. It was not contended that the amounts alleged due were incorrect or that they were not in default. In other words, the issue therein raised was the right of the court to appoint a receiver to manage the property and deprive them

of its use for the year following its sale under the special execution.

On October 27, 1967, the property was sold by the sheriff for $13,750 to the plaintiff. The sheriff's fee bill totaled $14,589.-74, which left a deficiency of about $840. On the same date Mr. Ashby filed his bond and oath and qualified as receiver herein.

On November 1, 1967, the Gaumers filed a resistance to the Engles' motion to set aside the decree, and on December 4 the plaintiff filed its resistance to that motion. Also on December 4 the receiver filed an application for instructions, and on February 7, 1968, these motions were heard by the court. The motion to set aside was overruled and an enrolled order provided instructions to the receiver. Therein the court found a deficiency judgment existed pursuant to the sheriff's sale, that thereafter the receiver demanded possession of the real estate and offered the Engles the first chance to rent the same, and concluded the receiver was entitled to possession as of October 28, 1967, and that the rents and profits accruing therefrom after that date were due the receiver. It further established the fair and reasonable monthly rental at $135 per month, or $4.50 per day, and provided that the receiver was entitled to collect from the Engles the sum of $459 as rent from October 27, 1967, to February 6, 1968. It also directed that a writ of possession be issued putting the receiver in possession of the real estate, and entered a judgment against the Engles for $459 with interest at five per cent from the date of this order and provided, upon the request of the receiver, that general execution issue to collect that sum from the Engles.

The record further discloses that the Engles vacated the real estate on February 17, 1968, and that on February 27 a debtor of Mr. Engle was garnished under the general execution against him. On March 7, 1968, the Engles appealed. Appellee contends this judgment and decree was right, that the overruling of its motion by the first judge was error, that no substantial rights of the parties were affected by this

decision, and that the revealed procedural irregularity was not reversible error. I would agree, and believe the errors, if any, were harmless.

Summary judgment provisions in effect prior to July 2, 1967, could be used only in certain limited types of cases, such as suits on "a debt, or some other money demand which is liquidated" brought by a plaintiff. Under the new summary judgment rules, which are modeled after the federal rules, there is no restriction regarding the type of cases wherein a summary judgment can be issued. Since we have adopted the federal summary judgment rules with only minor changes, we should give weight to the decisions rendered by federal courts which have interpreted federal rules. Under those rules judgments have been granted in tort cases (American Airlines v. Ulen, 1949, 87 U.S.App.D.C. 307, 186 F.2d 529), actions for specific performance (Palmer v. Chamberlin, 5th Cir. 1951, 191 F.2d 532, 27 A.L.R.2d 416), actions concerning title of stock certificates (Sun Ins. Office, Ltd. v. Leshefsky, D.Mass.1940, 31 F.Supp. 952), and preferred stockholder's suit to recover par value of his stock (Schneider v. Foster-Thornburg Hardware Co., S.D. W.Va.1940, 33 F.Supp. 271). Moreover, summary judgments under the federal rule have been granted for defendants with some frequency. Some of these are: Hunt v. Pick, 10th Cir. 1957, 240 F.2d 782 (laches); De Luca v. Atlantic Refining Co., 2d Cir. 1949, 176 F.2d 421 (statute of limitations); Minnesota Mining & Mfg. Co. v. Superior Insulating Tape Co., 8th Cir. 1960, 284 F.2d 478 (res judicata); Mabardy v. Railway Express Agency, D.Mass. 1939, 26 F.Supp. 25 (collateral estoppel).

I am satisfied this was a proper case for summary judgment and, in view of the fact that the motion was filed subsequent to July 2, 1967, find our revised rules apply. Applicable portions of rules 237 and 238 are as follows:

Rule 237, R.C.P.:

"Summary judgment may be had under the following conditions and circumstances:

"(a) For claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the appearance day or after the filing of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.

\*     \*     \*     \*     \*

"(e) Form of affidavits; Further testimony; Defense required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or filed therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, further affidavits, or oral testimony. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Rule 238, R.C.P.:

"Motions and affidavits relating to any claim under rule 237 shall be filed and copies delivered as provided in rule 82 and hearing shall be had thereon as provided in rule 117."

Here, as appellee points out, the alleged default in the mortgage and the mortgage

balance were set forth as evidentiary facts in the petition and attached affidavits. They were not denied, and appellants failed to set forth any specific facts showing there was a genuine issue for trial. They merely denied personal liability because of their discharge in bankruptcy and claimed the real estate was their homestead. Neither became a factual issue of consequence in the legal determination of this case, as no personal judgment was rendered against them and their legal homestead rights were properly considered.

Reference has been made to the records which were before the court on September 1, 1967, and September 8, 1967, when it made the diverse rulings found in calendar sheets No. 1 and No. 2. Apparently neither judge held a hearing at the time he ruled upon the plaintiff's motion for summary judgment and the resistance thereto. However, as heretofore pointed out, I would hesitate to send this matter back to the district court to hold a hearing which would in no way change the results of this litigation. Although appellants vigorously contend the second judge had no jurisdiction to act in this matter, I do not agree. Each judge had the parties and the subject matter before him. If the unusual circumstance of these judges ruling differently on the same motion did not involve the substantial rights of the parties, little more than a procedural irregularity was involved. Both judges were empowered to act in this matter, both had jurisdiction of the parties and the subject matter, and neither had exclusive rights in the pending legislation, at least prior to the full trial of the issues. Kuiken v. Garrett, 243 Iowa 785, 790, 51 N.W.2d 149, 153, 41 A.L.R.2d 1397, and citations. This is not the same situation as Dunkelbarger v. Myers, supra, 211 Iowa 512, 233 N.W. 744.

In Dunkelbarger, one judge was given the assignment to try an equity case then pending in the district court. After trial and while he had the matter under advisement, a second judge, unaware of those facts, entered an order dismissing the cause without prejudice for failure to try within the time set by rule. Thereafter the first judge set aside the dismissal and rendered judgment under which execution was issued and levy made. Pursuant to a denial of a motion to set aside the judgment, there was an appeal to this court. In affirming the trial court we recognized the jurisdiction of the court to consider such matters, but held, when a matter is placed before one judge, his action is the action of the court, and so long as he purports to act in that case, all other judges in the district must be excluded from making any orders which in any way would affect the substantial rights of the parties. At that time we labeled this "the practical rule" and pointed out any other rule might result in utter confusion. The court concluded the order of dismissal was without jurisdiction and void. I have been unable to find any contra opinion of the court since the Dunkelbarger case and would be constrained to follow it upon a showing that one judge purported to act in a particular case and that a subsequent order by another judge of the district did affect the substantial rights of the parties.

In the case at bar Judge Newton was first presented the motion to grant plaintiff summary judgment. I assume he examined the files, which included the defendants' resistance and affidavit attached, and that the ruling was made on a motion day without a hearing thereon.

It may be assumed that Judge Frederick did likewise when a calendar sheet presented to him did not reveal any prior action by the court on the motion. In any event, Judge Frederick, not being aware of Judge Newton's order of September 1, granted the motion ex parte on September 8. He found "Plaintiff's motion for summary judgment is in proper form, and that Defendants appearing of record have not in any manner resisted Plaintiff's motion as required by R.C.P. 238." Thereafter he entered judgment and decree as per enrolled order. Personal judgment against the appellants on the note was not granted

and the order did not provide for a receiver unless or until it appeared the security was inadequate and a deficiency existed subsequent to the foreclosure sale.

Appellants contend the procedure which was followed substantially and materially affected their right to redeem the property or to sell their right to redeem. They maintain the real estate was worth more than the unpaid amount of the mortgage, but because of certain judgment liens involved when those creditors were made defendants in this suit, they could not redeem as those amounts exceeded their equity. I fail to see how this decree affected the redemption rights of the appellants. True, their right to rent-free possession was terminated when the receiver took over subsequent to the sheriff's sale, but this did not affect the right of the Engles to redeem within one year or to sell their right of redemption therein.

In this connection it must be pointed out that, although this real estate was the homestead and subject to the provisions of chapter 561, Code 1966, it is well established in Iowa that, when it appears in a foreclosure suit that the security is inadequate and a deficiency exists, a receiver should be appointed to conserve the security and apply the proceeds to the indebtedness and costs. Iowa-Des Moines Bank v. Crawford, 217 Iowa 609, 252 N.W. 97; Finken v. Schram, 212 Iowa 406, 236 N.W. 408; Prudential Ins. Co. v. Puckett, 216 Iowa 406, 249 N.W. 142; Fellers v. Sanders, 202 Iowa 503, 210 N.W. 530; Gilbert v. Berry, 190 Iowa 351, 180 N.W. 197; Sheakley v. Mechler, 199 Iowa 1390, 203 N.W. 929. See also 27 Iowa L.Rev. 626. Each of these cases involved a mortgage foreclosure on real estate which included a homestead and circumstances which called for the services of a receiver. In Finken v. Schram, supra, in affirming the appointment of a receiver after sale of the property disclosed a deficiency remaining unpaid, we said at page 413 of 212 Iowa, at page 411 of 236 N.W.: "A deficiency judgment resulted after applying all the land, including the homestead, on the mortgage indebtedness. The receiver was not appointed until after this deficiency appeared. Hence the action of the district court in appointing the receiver at that late date recognized Schrams' homestead rights in harmony with our holding in Sheakley v. Mechler, * * *."

In Sheakley v. Mechler, supra, involving the foreclosure of a mortgage on land which included the defendant's homestead, the court made a provisional order for the appointment of a receiver under which the receiver was not entitled to take possession until about three months after the entering of the decree. The defendant appealed the order appointing a receiver and, in affirming the case, we said at page 1395 of 199 Iowa, at page 931 of 203 N.W.: "The real question at issue involves the right of occupancy of a homestead by the mortgagor during the year of redemption. May he pledge this right as security for a debt? If not, why not? Section 10150 of the Code of 1924 provides that: 'The homestead of every family * * * is exempt from judicial sale, where there is no special declaration of statute to the contrary.' Clearly, a sale under foreclosure is a statutory judicial sale. What is the special declaration of our statute which removes the homestead from the defined definition? It is: 'The homestead may be sold to satisfy debts * * * created by written contract by persons having the power to convey, expressly stipulating that it shall be liable, but then only for a deficiency remaining after exhausting all other property pledged by the same contract for the payment of the debt.' * * * In brief, we hold that a receiver under a mortgage may not take possession of the homestead until sale on execution is had, as it cannot be determined until that time, with that degree of certainty contemplated by the law, that a deficiency exists."

In Fellers v. Sanders, supra, we considered proof sufficient to establish inadequacy of security, and said at page 505 of 202 Iowa, at page 531 of 210 N.W.: "There

was a conflict in the testimony as to the value of the property. But the inadequacy of the security to satisfy the mortgage debt is *conclusively established* by its sale on execution for less than the amount due on the judgment", citing Sheakley v. Mechler. (Emphasis added.)

In Prudential Ins. Co. v. Puckett, supra, we made this observation at page 407 of 216 Iowa, at page 143 of 249 N.W.: "We have held that a receiver ought not to be appointed in a proceeding to foreclose a mortgage, where the mortgage does not contain a pledge of the rents and profits or a stipulation for the appointment of a receiver, without a showing of insolvency; but we have never held that a receiver should not be appointed, except upon a showing of insolvency, where the mortgage pledges the rents and profits and provides for the appointment of a receiver, and the proof shows inadequacy of the security. We now hold that where the mortgage pledges the rents and profits and provides for the appointment of a receiver, and the proof shows inadequacy of security, a receiver should be appointed without proof of insolvency."

In the case at bar I find the following provision in the mortgage instrument assumed by appellants:

"11. It is agreed that if and when suit is commenced to foreclose this mortgage, upon filing of a petition for such foreclosure, or at any time thereafter before the time for redemption expires, the plaintiff, without giving notice of hearing thereon and without proof of insolvency of the mortgagors or others assuming the indebtedness secured by this mortgage and without proof of inadequacy of the security herein pledged and even if the mortgaged property is a homestead, shall be entitled to have a receiver appointed by the court, who shall immediately take possession and charge of and manage and control mortgaged premises even if they be a homestead and remove the occupants and lease the same and collect the rents, income and profit until the time for redemption expires

and the execution sale purchaser gets title thereto and possession thereof. * * * "

Both under the law of this jurisdiction and the agreement between the parties the trial court properly appointed and provided for a receiver to take charge of and manage this real estate after it appeared a deficiency existed pursuant to the sheriff's sale thereof. Iowa-Des Moines Bank v. Crawford, supra, and cases cited therein. I find no error in the judgment and would hold the court committed no error in overruling appellant's motion to set aside the decree rendered here. I would affirm.